BLACKFORD *v.* OLMSTEAD.

140  583
s147   56

1. EQUITY—LOST DEED — BILL TO ESTABLISH — NECESSARY AVER-
MENTS—QUIETING TITLE—STATUTES.

The statute (§ 448, 1 Comp. Laws) conferring jurisdiction upon
courts of chancery in proceedings to quiet title was not in-
tended to restrict the jurisdiction of the court of chancery in
matters before cognizable by that court, and a bill to restore
a lost deed and for a record of the decree for the protection
of complainant's title comes within a well-recognized head of
equity jurisprudence, and is maintainable though it fails to
show that complainant is in possession, or that defendant is
not, as required by the above-mentioned statute.

2. SAME—MULTIFARIOUSNESS.

Where a bill is filed to restore a lost deed and set aside certain
codicils to the grantor's will, under which certain legatees
would claim except for complainant's prior title, the state-
ment of the legatee's claims for the purpose of cutting them
off, is germane to the main purpose of the suit, and the fact
that the relief by way of setting aside the codicils is beyond
the power of the court to grant does not render the bill mul-
tifarious.

3. DEEDS—DELIVERY.

Where a deed is delivered to the grantee with intent to vest
title, a redelivery of it to the grantor for the purpose of insur-
ing that it shall not be recorded will not defeat the grantee's
title.

Appeal from Barry; Smith, J. Submitted April 25,
1905. (Docket No. 84.) Decided June 29, 1905.

Bill by Charles H. Blackford against Kittie Olmstead
and others to re-establish a deed, and for other relief. From
an order overruling a demurrer, defendants appeal. Af-
firmed.

*Colgrove & Potter*, for complainant.

*W. S. Powers, Thomas & Pryor,* and *Jesse Arthur,*
for defendants.

MONTGOMERY, J.   This is an appeal from an order of
the circuit judge, sitting in chancery, overruling a de-
murrer to complainant's bill.   The bill alleges, in sub-
stance, that Joel Evans was in his lifetime the owner of a
farm in the township of Johnstown, Barry county, and
that complainant had been employed by him from April,
1884, to July 1, 1892, as a farm laborer, at the price of $20
a month for seven months in the year, and $12 a month
for the remaining five months.   The bill then alleges:

"That on or about the 1st day of July, 1892, the said
Joel Evans and his wife, Deborah Evans, desired to change
the contract of employment with complainant, and then
and there entered into a contract with complainant sub-
stantially as follows:

"That complainant was to work for the said Joel Evans
and his wife so long as they should live, and to receive, as
and for his compensation for work and labor so performed
for them, the sum of $17 per month for seven months in
the year, and $5 per month for the remaining five months
in the year, and that if complainant would continue in the
employ of the said Joel Evans and his wife during their
lifetime, that, as additional compensation for his work and
labor, complainant was to have a warranty deed of the
east half of the northwest quarter of section 35 in the
township of Johnstown, Barry county, and State of Mich-
igan.   That this contract was made between said parties
and agreed to, and that, in order to carry into effect said
contract so made, the said Joel Evans and wife, in or
about the month of July, 1892, went to the city of Battle
Creek, Calhoun county, Mich., and caused to be made a
warranty deed of said 80 acres of land last described to
complainant.   That said deed of conveyance was drafted
by a justice of the peace of the city of Battle Creek, by
the name of Briggs.   That the consideration mentioned in
said warranty deed was the sum of $4,000 and other val-
uable considerations.   That said deed was fully executed
by the said Joel Evans and wife, signed by them, and
acknowledged before said Briggs, justice of the peace, and
witnessed by two witnesses, as required by the recording

laws of the State, and that said deed was brought by the said Joel Evans and wife to their home in Johnstown, and delivered to complainant. That said deed was returned to the said Joel Evans and his wife, who promised and agreed with the complainant that said deed should be retained by them so long as they lived, and that upon the death of the said Joel Evans and his wife the same should be immediately placed upon record, and that complainant should come into the full possession and ownership of said 80 acres of land.   *   *   *

"That Deborah Evans, wife of said Joel Evans, died July 28, 1898, and that complainant continued in the employ of said Joel Evans, and in carrying on said contract, until the death of Joel Evens, on the 31st day of December, 1903.

" That said complainant has fully completed all the terms and requirements of said contract.   *   *   *

"That after the death of Deborah Evans, and in December, 1901, one Sarah Thompson was employed as a domestic in the home of Joel Evans, upon a stipulated salary. That, by a systematic course of fraud and deceit and undue influence, she began to take advantage of Joel Evans, and to acquire so much of his property as was in her power so to do, and succeeded in procuring from the said Joel Evans a warranty deed of said 80 acres of land involved in this suit. That said deed was sent for record to the register's office of Barry county, Mich., with the suspicious direction, 'Don't publish,' upon it. That said deed was secured by fraud and deceit and undue influence, and at a time when the said Joel Evans was mentally incompetent to execute a deed, and is void and of no effect as against the rights of complainant.

"That, at the time said deed was procured, (*a*) Joel Evans was mentally incompetent to execute the same; (*b*) that he was subject to the habitual use of intoxicating liquors; (*c*) that the same was procured by fraud and undue influence; (*d*) that Joel Evans was an ignorant man, unable to read or write, and that said Sarah Thompson, and those combining and confederating with her, took advantage of said Joel Evans, his inability to read and write, of his mental and physical condition and loss of mental capacity by reason of sickness and the excessive use of alcoholic stimulants, and procured from him the deed to Sarah Thompson.

" That said Sarah Thompson entered into a conspiracy

with one Sands H. Lane, through the aid and assistance of Jesse Arthur, to procure from said Joel Evans the largest part of his property.

"That the will and codicils mentioned and described in said bill of complaint express the wish and will of said Sarah Thompson and Sands H. Lane, aided and assisted by the said Jesse Arthur, and that said codicils in no way express the wish and desire of Joel Evans, and were not made and executed by him, but by those conspiring and confederating against him.

"That, the said Sarah Thompson, in order to cheat, wrong, and defraud complainant, destroyed the deed which the said Joel Evans and wife made to complainant of said 80 acres of land, in order that she might better be able to carry out her fraudulent purpose and design."

The will referred to purported to dispose of all the property of Joel Evans, and treated the land in question here as a part of testator's property. The will provided a legacy to complainant of $500. The first codicil contained an additional bequest of $500 to complainant. The second codicil provided that, in case complainant was dissatisfied and should bring suit against the estate, the expenses of such suit should be paid out of the $1,000 bequeathed to complainant.

The bill prays that the court decree specific performance of the contract between Joel and Deborah Evans and complainant; that the deed to complainant be re-established, and that title to the 80 acres in question be decreed to complainant; that the deed to Sarah Thompson be set aside; that the codicils to the last will of Joel Evans be set aside in so far as they conflict with the just claims of complainant. The bill also contains a general prayer for relief. The grounds of the demurrer were that under the facts stated the complainant has an adequate remedy at law; that the court has no jurisdiction to set aside the codicils; that the bill is multifarious.

The contention that the complainant should seek his remedy at law is based upon the claim that the bill is to be treated as a bill to quiet title, and as it fails to aver possession in complainant, or that defendants are not in

possession, it is fatally defective under the statute (1 Comp. Laws, § 448) as construed by this court in *Seymour* v. *Rood*, 121 Mich. 173, *Chandler* v. *Graham*, 123 Mich. 327, and *Crosby* v. *Hutchinson*, 126 Mich. 56.

If the complainant was compelled to rely upon the statute above cited as conferring jurisdiction, the objection urged would be insurmountable. But it has been frequently held that this statute conferring jurisdiction upon courts of chancery in proceedings to quiet title was not intended to restrict the jurisdiction of the court of chancery in matters before cognizable by that court. *King* v. *Carpenter*, 37 Mich. 363; *Jones* v. *Smith*, 22 Mich. 360; *Ormsby* v. *Barr*, Id. 80. The bill in this case asks to have a lost or destroyed deed restored, and for a record of the decree for complainant's protection. The case comes clearly within a well-recognized head of equitable jurisprudence. See *King* v. *Carpenter*, supra.

The criticisms as to the form of the bill are, *first*, that it is multifarious, *second*, that a court of equity has no authority to set aside the codicils, and, *third*, that necessary parties are omitted, i. e., certain legatees under the codicil to the will. If the second contention be accepted, and it is, both by complainant's counsel and the court, there would seem to be no necessity for joining any legatees named in the codicil except those who, as representatives of Sarah Thompson, would take under the codicil except for complainant's prior title. For the purpose of cutting off the claims of the representative of such legatee, a statement that this codicil was made in their favor would seem to be germane to the main purpose of the suit. This being so, the fact that relief was asked beyond the power of the court to grant does not render the bill multifarious. *Stone* v. *Railroad Co.*, 139 Mich. 265.

The meritorious question remains. It is contended that the bill wholly fails to state a case, for the reason that there was no delivery of the deed such as would pass title to complainant, and that there was no such part perform-

ance as would cut off the defense of the statute of frauds. If defendants' premises are well taken, it would be diffi- cult to find an answer to their contention.   As we construe this bill of complaint, however, it alleges that a deed of this land was made and delivered to him, and was then handed back to the grantor to insure that it would not be placed of record.   If the proofs should show a delivery with intention to vest title, the fact that the deed was returned to the grantor would not in law defeat a delivery once accomplished.   13 Cyc. p. 563; *Hall* v. *Dobbin*, 119 Mich. 106.

The cases cited by defendants' counsel—*Schuffert* v. *Grote*, 88 Mich. 650, and *Merchant* v. *Guilds*, 129 Mich. 168—bearing some analogy to the case at bar, were determined upon a consideration of the question of fact involved.

The order is affirmed, with costs, and the case remanded for further proceedings.

MOORE, C. J., and GRANT, BLAIR, and OSTRANDER, JJ., concurred.