McCAULEY v. SCHROCK.

1. CANCELLATION OF INSTRUMENTS — DEEDS — EVIDENCE — SUFFI-
CIENCY.

In a suit by a husband, after his wife's death, to set
aside her deed of the property where they lived to his
daughter, who was the wife's niece, and who had cared
for her in her last sickness, plaintiff's claim that the
property was paid for by him and the title taken in the
wife's name to protect her, *held*, not sustained by the
proofs.[1]

2. SAME—MENTAL COMPETENCY—UNDUE INFLUENCE.

Evidence *held*, insufficient to establish mental incompe-
tency or undue influence.[2]

3. DEEDS—DELIVERY—ESCROWS.

Any condition not expressed in the deed would constitute
an attempt to make delivery to the grantee in escrow, and
this may not be done.[3]

4. SAME—VALID DELIVERY MAY NOT BE DEFEATED BY RETURN OF
DEED TO GRANTOR.

If the proofs show a delivery with intention to vest title,
the fact that the deed was returned to the grantor would
not in law defeat a delivery once accomplished.[4]

5. SAME.

Where the grantor delivered the deed to the grantee and
then requested her to deliver it to the notary to be re-
delivered on the grantor's death, which was done, and
the deed recorded, the grantee's title thereunder is not
subject to attack for want of sufficient delivery.[5]

Cross-appeals from Wayne; Dunham (Major L.),
J., presiding. Submitted June 24, 1926. (Docket
No. 34.) Decided October 4, 1926.

Bill by John McCauley against Elizabeth Schrock

[1]Trusts, 39 Cyc. p. 163; [2]Deeds, 18 C. J. §§ 551, 552; [3]Id., 18
C. J. § 116; Escrow, 21 C. J. § 19; [4]Id., 18 C. J. § 97; [5]Id., 18
C. J. § 114 (Anno); 16 L. R. A. (N. S.) 941; 8 R. C. L. 983;
4 R. C. L. Supp. 585; 5 R. C. L. Supp. 490.

and Margaret Cooper to set aside a deed. On the death of plaintiff, the suit was revived in the name of John S. McCauley, special administrator. From a decree dismissing the bill, plaintiff and defendant Cooper appeal. Affirmed.

*Woodruff & Woodruff* and *Atkinson & Schweikart*, for plaintiff.

*Fleming & Baird*, for defendant Cooper.

*Charles F. Delbridge* and *W. Leo Cahalan*, for defendant Schrock.

SHARPE, J. John McCauley came to this country from Ireland in 1881, and thereafter lived in Detroit and Wyandotte. He was married in Ireland. After the death of his first wife, he married her sister Anna. The latter died on May 25, 1921. Seven days before her death, she executed a deed conveying a lot in the city of Wyandotte on which was a dwelling house, in which they were then living, to the defendant Elizabeth Schrock, her niece, a daughter of John McCauley by his first wife. This deed was recorded on May 28, 1921. On October 16, 1921, the bill herein was filed by John McCauley. In it he alleges that the lot in question was purchased and paid for by him but the title placed in his wife's name to protect her in case he should die before she did; that his wife had been ill for a long time before her death and "was mentally incompetent and could not understand the nature of a deed of conveyance" at the time she executed it, and that her signature thereto was procured by undue influence exercised over her by the grantee therein named. The bill also alleges that the plaintiff and the defendant Margaret Cooper, a sister of the deceased, are the heirs at law of said deceased, and prays that the deed be set aside as a cloud upon

their title to the property. The defendant Elizabeth Schrock (hereafter called the defendant) answered, denying the material allegations in the bill. During the hearing a question arose as to the delivery of the deed, and plaintiff was permitted to amend the bill and make claim therein that there had been no sufficient delivery by the grantor prior to her death. The trial court found that the plaintiff had failed to maintain any of his claims, as outlined above, by sufficient proof, and entered a decree dismissing the bill of complaint. The plaintiff gave notice of appeal. On October 15, 1923, he died and the cause was revived in the name of his son, John S. McCauley, as administrator.

The proof does not support plaintiff's claim that the property in question was purchased with his money. It quite clearly appears that the purchase price was in most part paid by deceased out of money received by her from the sale of property left her by her former husband.

The deceased had been suffering from paralysis for several years prior to her death. The family were scattered, and the only one who had given much attention to the father and deceased was the daughter Elizabeth, the defendant. She testified that in January, 1921, her father came to her and begged her to come to their home and take care of the deceased. She at that time had five children of her own, one of whom was suffering from a broken limb, and felt that she could not go, but on his insistence she took her family there and cared for the deceased until her death on May 25th. A part of this time the deceased was in a hospital. She was taken home on May 13th. Before leaving the hospital she signed a check for the bill for services rendered her. On May 16th the roof of the house caught on fire and was slightly damaged. Deceased asked defendant to request John

F. McInerny, an insurance agent, to call and see her about it.    He came on the 17th and adjusted the loss to her satisfaction.    He testified that she was then "very competent to transact business;" that she then told him she wanted to deed her property to the defendant; that the next day he went to the bank and got the description of the lot and prepared the deed and took it to her house.    He further testified:

"She seemed to be rational that day.    I was there probably half an hour and talked about the deed.    I could not remember the conversation.    I asked her whether or not she understood the nature of the deed and to whom she was deeding.    She said that was her wish and always had been, that Lizzie would get it.    By Lizzie was meant Lizzie Schrock.    Mr. McCauley, the plaintiff, was in the room with Mrs. McCauley at the time the deed was executed.    He did not say anything about the transaction that I know of.    Mrs. McCauley was resting on a couch and the plaintiff was standing along by her side or sitting by her side.    I don't recall any statement that the plaintiff made protesting to the execution of the deed."

The plaintiff denied that he was present on this occasion, and, while he lived with defendant in the home after his wife died, he testified that he did not know that the property had been deeded to her until he left in the following September.

The burden of proof is on the plaintiff.    The testimony of Mr. McInerny and several of the friends and neighbors of the deceased who were called as witnesses satisfies us that he has failed to establish the mental incompetency of the deceased or the charge of undue influence by the defendant.

The defendant was in an adjoining room when the deed was executed.    Mr. McInerny testified:

"Upon the request of Mrs. McCauley I called Mrs. Schrock in the room and she told Mrs. Schrock what she had done.    It was her wish that she have the property; and she delivered the deed to Mrs. Schrock;

and instructed her to deliver it to me to keep it in trust for her."

On cross-examination he testified:

"*Q.* She handed the deed to Mrs. Schrock, did she?
"*A.* Yes.
"*Q.* And told her to give it over to you?
"*A.* Yes.
"*Q.* And then told you to hold the deed until you got further orders from her?
"*A.* Yes.
"*Q.* That is all."

The defendant testified:

"*Q.* Now, on the next day, on the 18th, what happened?
"*A.* Well, she said to me, she said, 'I think I had better fix this property. Tell your father I want him.' I did, and he went up and she told him she thought she had better make over the property to me, and he was perfectly satisfied. She said, 'Call Mr. McInerny and Mr. Van Alstyne.' Mr. Van Alstyne had business so Mr. McInerny came out and made the deed. I wasn't there. I was in the bathroom and they called me and told me what she had done and gave me this deed and I was to give it back to Mr. Van Alstyne (McInerny). I wasn't to have anything to do with it until her death. The place was hers as long as she lived. After her death I was to get the property."

We are satisfied that plaintiff was present when the deed was executed and delivered. One of his sons was a subscribing witness. The wife of another son, who came from Chicago to attend the funeral, testified that he told her that the property had been left to the defendant and that he would always have a home with her.

It is apparent from a consideration of all the testimony bearing on the question of delivery that it was the intention of the grantor that the property should

go to the defendant on her death.    There had been a delivery to defendant.    It is doubtful under our decisions whether any subsequent act or direction on the part of the grantor could thereafter affect the rights of the defendant.    Any condition not expressed in the deed would constitute an attempt to make delivery to the grantee in escrow, and this may not be done.    *Wipfler* v. *Wipfler,* 153 Mich. 18.    See note to this case in 16 L. R. A. (N. S.) 941.    In *Blackford* v. *Olmstead,* 140 Mich. 583, 588, it was said:

"If the proofs should show a delivery with intention to vest title, the fact that the deed was returned to the grantor would not in law defeat a delivery once accomplished."

The effect of the after direction, however, was but to place the deed in the hands of the notary to be redelivered to defendant on the grantor's death.    This was done.    The deed was recorded.    Defendant's title thereunder is not subject to attack for want of sufficient delivery.    *Cook* v. *Sadler,* 214 Mich. 582, and cases cited.

The decree is affirmed, with costs to appellee.

BIRD, C. J., and SNOW, STEERE, FELLOWS, WIEST, CLARK, and MCDONALD, JJ., concurred.