CASE 6—IN EQUITY—MARCH 9.

# King, Etc. v. Middlesborough Town & Lands Co., Etc.

### APPEAL FROM BELL CIRCUIT COURT.

1. DESCENT AND DISTRIBUTION—HALF BLOOD.—Collaterals of the half blood take by descent one half as much as those of the full blood.

2. APPEALS—PARTIES.—It seems a residuary devisee may appeal from a judgment partitioning the lands of his testator without joining the personal representative; but whether so or not, the joinder of the personal representative in the appeal will cure the omission.

3. SAME—CLERICAL MISPRISION.—Where the facts from which a title by descent is derived are correctly stated in the pleadings, the pleader's erroneous conclusion as to the legal effect of the facts, carried into judgment is a judicial error and not a clerical misprision.

4. AGREED JUDGMENT—MISTAKE.—This court will not hold a party to an agreed judgment where the agreement was entered into under mistake as to the legal effect of admitted facts.

5. DESCENT AND DISTRIBUTION—PURCHASER OF UNDIVIDED INTEREST.— A purchaser by executory contract of land inherited by the vendor jointly with others, is under no legal obligation to redeem the land from the ancestor's debt, although he may have sufficient money in his hands going to the vendee to make such redemption; because to do so would involve a redemption of the interest jointly owned.

    (On petition for extension of opinion.)

6. DESCENT AND DISTRIBUTION.—Lands of an infant dying in infancy go by descent to the infant's parents equally, and on the death of such parent such lands pass to his, or her, children as if he, or she, acquired same by purchase.

N. B. HAYS FOR THE APPELLANT.

1. If a judgment be procured and rendered under a mutual and simple mistake of law and fact as to the interest of the parties and a mutual and simple mistake of facts as to the extent of the mutual rights and obligations of the parties to each other will equity afford relief and correct the mistake? Civil Code, sec 734; Underwood v. Brockman, &c., 4 Dana, 317; Kerley v. Hume, 3 Mon.. 183; Ray, &c., v. Bank of Kentucky, 3 B. M., 514; Trimbles v. Harrison, &c., 1 B. M., 142; Price's Exr. v. Fuqua's Admr., 4 Mon., 68; Warvelle on Vendors, vol. 2, p. 805, sec. 16; Pomeroy's Eq Jur., (2d. ed.), vol. 2, sec. 849, pp. 1176-78; Ky. Stats., secs. 1393, 1395, 1401, 1402; Talbott v. Talbott, 17 B. M., 1; Milner v. Calvert, 1 Met., 472; Morr v. Hanna, 7 J. J. M., 643; Thorp v. Cotton's Exr., 7 B. M., 441; St. Louis Packet Co. v. Gray, 9 Bush, 148; McWilliams v. Henderson's Hrs., 3 Dana, 569; Newman's Pleading, pp. 258-266.

2. Where an heir conveys all his right, title and interest in the land of his ancestor to a vendee by deed of general warranty at an agreed and average price of $125 per acre; and where the vendee at the time of said contract knew the estate of the ancestor was not settled, and agrees to pay the debts of the heir and his ancestor to the extent of his obligations, but thereafter fails and refused to comply with his contract and to pay the purchase money to the heir or to settle said debt until said heir's interest in said land which is worth from $50 to $80 per acre is sold at a great sacrifice to pay said debts, will a court of equity permit the vendee to hold the part of said lands which was worth $400 to $500 per acre without accounting to the heir for the contract price of the part sold to pay said debts? English v. Thomasson, 82 Ky., 280; Trumbo v. Lockridge, 4 Bush, 415; Buford v. Guthrie, 14 Bush, 690; Perry on Trusts (4th ed.), vol. 1, p. 305. sec. 232; Gault v. Trumbo, 17 B. M., 685; Berry v. Walker, 9 B. M.,466; Sidner v. Hawes, 37 Ohio St., 533; 24 Am. & Eng. Ency. of Law, 248-253.

3. We do not admit that J. Smith Hays, administrator, and N. B. Hays were necessary parties to the first appeal from the judgment of October 12, 1894; however, we contend appellant will be permitted to amend his statement at any time before the final submission. Hersperger v. Smith, 15 Ky. Law Rep., 605.

W. S. PRYOR ON THE SAME SIDE.

King has such interest in this litigation as will entitle him to appeal; and if so, the case must be reversed in order that his contract may be enforced. Kesley v. Hume, 3 Mon., 183; McWilliams v. Herndon's Admr., 3 Dana, 569; Trimbles v. Harrison, 1 B. M., 142,

CALVIN HURST, ATTORNEY AND GUARDIAN ad litem FOR J. P. K. TURNER.

Counsel disclaimed any intention to rely on the judgment in favor of his ward if such judgment gave him a greater interest in the estate of his father and half-sister than he was entitled to, but in view of the fact that the question seemed to be a doubtful one submitted the case with a prayer that the judgment of October 12, 1894, might be affirmed.

SAMPSON & CHAPMAN IN A BRIEF AND SUPPLEMENTAL BRIEF FOR APPELLEE, MIDDLESBOROUGH TOWN AND LANDS CO.

1. That a party can not be heard to call in question on appeal a judgment rendered at his instance. Todd v. McClannahan, 1 J. J. Mar., 356; Chambers v. Wilkins. 2 Litt., 145; Outten v. Grinstead, 4 J. J. Mar., 609; Duncan v. Louisville, 13 Bush, 383; Union Bethel Church v. Gaylord, 1 Ky. Law Rep., 403; Stem v. West, 3 Bush, 389; Stewart v. Durrett, 3 Mon., 113; McMurty v. Henry, 4 Bibb., 411.

2. On question of King not being necessary or proper party to proceeding to divide land. McIntire v. McIntire, 82 Ky., 503.

2. On question of rights under covenant of seizin and against encumbrances. American Assn., Lmtd., v. Short, 17 Ky. Law Rep., 626; Howland Coal & Iron Works v. Brown, 13 Bush, 687; Mercantile Trust Co. v. South Park Residence Co., 94 Ky., 273.

4. On question of clerical misprision. Blackwell v. McBride, 14 Ky. Law Rep., 760; Pepper v. Thomas, 85 Ky., 541.

W. S. PRYOR IN A PETITION FOR A REHEARING AND A PETITION FOR AN EXTENSION AND MODIFICATION OF THE OPINION.

Additional citations: Warvelle on Vendors, vol. 2, ch. 26, sec. 8; Ream v. Jack, &c., 44 Iowa, 325; Barbour v. Bradley, 42 N. Y., 316; Wilson v. King (N. J.), 8 C. E. Green Eq. p. 150; Sedgwick on Damages (8th ed.), vol. 3, secs. 1023, 1024; English v. Thomasson, 82 Ky., 280; Camp v. Moreman, 84 Ky., 636; Bourne v. Bourne, 92 Ky., 201.

SAMPSON & CHAPMAN FOR THE APPELLEES IN A PETITION FOR A MODIFICATION AND AN EXTENSION OF THE OPINION.

N. B. HAYS FOR THE APPELLANTS IN RESPONSE.

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT.

In 1887, J. C. Turner died, intestate, leaving a wife (who died shortly thereafter) and three children, Alvis, Edith, and J. P. K. Turner. The widow was not the mother of Alvis and Edith, but of J. P. K. Turner. Alvis and Edith were children by a previous marriage, and J. P. K. Turner was their half-brother. Their father died seized of certain tracts of land in Bell county, Kentucky, which descended to his children. Not long after the death of her father, Edith, whilst an infant, died, and her interest in the lands which she inherited from him passed to her brother, Alvis, and half-brother, J. P. K. Turner. The General Statutes were in force at the time of her death, and the sections thereof relating to the descent of infants' estates were exactly the same as those of the Revised Statutes relating to the same subject. The sections regulating it as to a case like this were sections 3 and 9, c. 30, Revised Statutes, and sections 3 and 9, c. 31, General Statutes.

In Talbot's Heirs v. Talbot's Heirs, 17 B. Mon., 1, the court was called upon to construe these section and it was adjudged that those of the half blood would take half as much as those of the whole blood. Alvis Turner, of the whole blood, took two-thirds of Edith's one-third of her father's estate; and J. P. K. Turner, being of the half blood, took one-third of her one-third interest. It follows, therefore, that Alvis was entitled to five ninths of his father's estate, and J. P. K. Turner was entitled to four-ninths of it. Alvis entered into a writing with A. A. Arthur, trustee, by which he covenanted to convey to him his interest in the tracts of land of which his

father died seized, and also his interest in the tract which had been conveyed to his father and certain children, including himself. By the terms of this contract, Arthur was to pay him at the rate of $125 per acre for his interest in the land which was to be thereafter ascertained. Before his interest was ascertained, he executed and delivered to Arthur a deed for his interest in the land, the principal part of the purchase money to be thereafter paid. Before this was done this action had been instituted in the Bell circuit court by the personal representatives of J. C. Turner, to settle his estate and sell whatever might be necessary of his lands to pay his debts. Pending the action, Alvis died testate, and by his will the appellant, J. C. King, was made his residuary legatee. The will was probated, and King, by appropriate pleadings, became a party to the action. Arthur, trustee, became a party to the action, and, by appropriate pleadings, steps were taken looking to a partition of the land between him and J. P. K. Turner, which was accordingly done.

The facts which we have detailed appear in the pleadings, which show the death of J. C. Turner, the children who survived him, and the death of Edith in infancy; but all of the parties to the action seem to have been of the opinion that Alvis took the same share of his sister's estate as did the half brother, and, therefore, that he owned but one-half of the lands which had been left by his father. J. C. King, in his pleading, did not state the interest Alvis had in the lands. The partition of the land was made, and there was assigned to Arthur's vendee, who became a party to the action, the same amount in quantity and quality as was assigned to J. P. K. Turner. The question with which we are confronted is, can King

prosecute this appeal from the judgment of the court below so ordering a partition of the land and subsequent orders in the case? It appears that the special bequests made by Alvis were all paid, and King was the sole owner of the estate, and he is the party to be affected by the judgment which was rendered.

Under section 734, Civil Code of Practice, an appeal is granted, as a matter of right, to a party or privy against a party or privy, by the court rendering the judgment, or by the clerk of the Court of Appeals, on application of either party or his privy. It is suggested that the personal representatives of Alvis Turner should have prosecuted the appeal. They had no real interest in the remainder of his estate, and the court might have, in this case, ordered the residue of the estate paid to King. If there was any doubt as to the right of King to prosecute the appeal, independent of their wishes, it is removed by the fact that the personal representatives of Alvis Turner came into this court and moved to be made parties to the appeal, and to join with him in prosecuting it. By that proceeding they consented to the prosecution of the appeal.

A more difficult question is presented in view of the condition of the pleadings. The facts which show that Alvis Turner was entitled to five-ninths of the land left by his father were stated in the pleadings; but it is insisted that, in view of the fact that the parties were laboring under the impression as shown by the pleadings, the law only gave him the one-half interest, and he can not now complain on this appeal of the judgment. A motion was made in the court below to have the judgment corrected because it was a clerical misprision; but that was successfully resisted, on the grounds the incorrect-

ness of the judgment was not the result of a clerical misprision. If he can neither get relief by an appeal nor by having the judgment corrected on grounds that the error was a clerical misprision, then he would be with a clear right without any remedy. When the facts are stated in the pleadings, it is for the court to determine their effect in law and pronounce a judgment upon the facts stated in the pleadings. When the facts were stated as we have detailed, it was a mere conclusion of the pleader when it was said that Alvis Turner was only entitled to a half interest in the lands.

In Kerley v. Hume, 3 T. B. Mon., 183, it was said: "In replevin, as in other actions, the judgment which it is incumbent upon the court to render is the conclusion of law upon the facts of the case, and not the result of any demand or prayer that either party may think proper to make in the pleadings.

From the pleadings in this case we can not hold that the appellant, King, consented to the judgment which was rendered. The most that can be said is that he did not object to it, because he did not seem to know what his legal rights were. One tract of land which descended from J. C. Turner was known as the "Mingo Mountain Tract," which contained 106 acres, and it was sold to pay his debts after Arthur, trustee, had bought, and Alvis Turner had conveyed to him his interest in it. As there would have been a large sum in the hands of Arthur, due as purchase money on the land when the quantity was ascertained, it is insisted that he should have paid off the debts due from the estate of J. C. Turner, and thus have saved the land from sale; and, as he did not do so, he must account for the difference between what the land brought and its value, according to the contract price.

If King had paid off the debts of J. C. Turner against the land, he then could have forced Arthur to take and pay for the interest which he bought. There is nothing in the contract which Arthur made with Alvis Turner, so far as this record shows, which required him to pay the debts of J. C. Turner. He could not have paid one-half or five-ninths of them, and thus released the claim of J. C. Turner's creditors on the interest in the tract of land which he bought. To do this he would have been compelled to pay off the entire debts, and in doing which he would have paid the part of the debts for which the interest of J. P. K. Turner was liable. Arthur could not be required to advance money for that purpose and take the chances of being reimbursed from the interest which had descended to the infant. To avoid this difficulty when the land was sold, J. P. K. Turner's guardian and the appellant, King, became the purchasers; and afterwards they came into court and offered their purchase to Arthur on the terms of his contract with Alvis Turner. Arthur could not be compelled to accept the tract of land under his contract with Alvis Turner, because he only bought his interest in it, and was under no obligation to take the interest of J. P. K. Turner. Besides, it appears that King and the infant's guardian never paid for the land; and it is not clear from the record that at that time it was released from the amount of purchase money King, etc., had contracted to pay for it, or that the debts of J. C. Turner had been paid. At that time the creditors may have had the right to enforce their claims against the land by reason of the fact the purchasers did not discharge their obligations. Again, Alvis Turner, being a party to the action, asked for a sale of the land to pay his father's debts, and King seems to have been willing that it should be done.

We are of the opinion that the land should be re-divided at the cost of King, having regard, as far as possible, to the previous partition, and that Alvis Turner's vendee should be assigned five-ninths instead of one-half of the land which was left by J. C. Turner, and that so much of that interest as has not been paid for should be paid for at the rate of $125 per acre according to the contract which Arthur entered into with Alvis Turner. The judgment on each appeal is reversed for proceedings consistent with this opinion.

JUDGE PAYNTER IN RESPONSE TO PETITION FOR EXTENSION.

J. L. Turner died in infancy, during the lifetime of his father and mother; and we are of the opinion, from the facts as they appear in this record, that his interest in the tract of land known in this record as the "John Turner, Sr., Tract" descended to his father and mother in equal moieties, and Edith Turner's interest therein descended to Alvis and J. Proctor Knott Turner the same way as did her interest in the balance of the lands.