## Beatty, et al. v. Beatty

(Decided January 16, 1913.)

### Appeal from Clay Circuit Court.

1. Husband and Wife—Action for Alimony—Cross Action for Divorce —Evidence.—In an action for alimony by the wife and a cross-action by the husband for divorce, evidence examined and held sufficient to justify a finding in favor of the wife.

2. Husband and Wife—Attachment—Claimant—Evidence.—In an action for alimony by the wife against the husband, where the property of the husband is attached and his brother claims the property by purchase from the husband, evidence examined and held insufficient to sustain his claim.

3. Land—Purchase by Father for His Children—Deed—Delivery to Father—Sufficiency of Delivery.—Where a father purchases land from third parties, and takes the title to his children and puts them in possession, a delivery of the deed to the father is sufficient to vest title in the children, though the deed be not put to record.

A. T. MANNING, D. W. WHITE, A. D. HALL and A. W. BAB-BAGE, for appellants.

RAWLINGS & WRIGHT, for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

On August 24, 1908, appellee, Nannie Beatty, who at that time was 16 years of age, and appellant Arch Beatty, ran away from home for the purpose of getting married. They spent that night at the home of one William Gross, and occupied the same room. On the next day they proceeded to London, Kentucky, and about two o'clock P. M. they took a train bound for Tennessee,

where the marriage, according to appellant's promise, was to take place. Appellee's father pursued the couple and found them on the train at Faris Station, Kentucky. The father took them from the train and appellant agreed with the father to go back to London and marry appellee. When they reached London appellee's father started to procure a marriage license. When he had gotten some distance away, appellant ran off and refused to carry out his agreement. Appellee's father then instituted certain proceedings against appellant, both of a criminal and civil nature. This being done, appellee went home with her father. Subsequently appellant agreed to marry appellee, and on August 27, 1908, the marriage took place. At that time appellant was living with his brother, B. P. Beatty, and as soon as the marriage took place, appellant and appellee repaired to the home which had previously been occupied by appellant and B. P. Beatty. Appellant was a stock trader, and was frequently away from home for several days or weeks at a time. About March 6, 1909, appellant left for Oregon, without giving appellee any notice of his intention to leave her. After appellant left, appellee went to the home of her father.

On March 12, 1909, appellee brought this action against appellant Arch Beatty to recover alimony, alleging that appellant had abandoned her without fault on her part. She obtained both general and specific attachments against the property of appellant. These attachments were levied upon certain property alleged to belong to appellant, and various persons were summoned to answer as garnishee. A warning order was made against appellant, and a corresponding attorney appointed, who filed his report on May 17, 1909, stating that he was unable to find out where appellant resided or might be found. Thereafter appellee took certain depositions in support of her petition. On April 25, 1911, the cause was submitted for judgment, and on May 4, 1911, the court rendered judgment awarding appellee alimony in the sum of $1,000, and sustaining the attachments. Appellee was adjudged a lien on the attached property, and a sale thereof was directed. On the same day the court set aside that part of the judgment which directed a sale of certain cattle claimed by B. P. Beatty. On May 5, 1911, B. P. Beatty filed his verified petition, and asked to be made a party to the action. By this pleading, he claimed as his own certain personal property that had been attached. Subsequently ap-

pellant Arch Beatty moved the court to set aside the judgment rendered against him, and grant him a retrial of the action. He filed bond for costs, and also an answer and counterclaim. In the first paragraph he denied the allegations of the petition. In the second paragraph he alleged that upon returning to his home from one of his business trips he was confronted with the information that his wife was not of the kind, loving, dutiful character and disposition which he had supposed her to be. He further alleged that she had been guilty of such lewd and lascivious behavior in his absence from home as proved her to be unchaste. He also charged that he did not desire to enter into litigation with appellee, but sought to avoid litigation with and exposure of the woman he formerly loved, and on this account he left his home. He asked that appellee's petition be dismissed, and that he be granted a divorce.

It appears that appellant B. P. Beatty executed a bond for the forthcoming of certain personal property attached in his hands. On a final hearing the court fixed the value of the personal property in the hands of appellant B. P. Beatty at $500. It also appears that $200 had been attached in the hands of H. B. Martin, Administrator. The court awarded appellee alimony in the sum of $250, and fixed her attorney's fees at $100. The sheriff was ordered to take possession of the attached property and sell the same. In the event the appellant B. P. Beatty failed to produce the property, he was ordered and directed to pay the plaintiff the sum of $250, or whatever amount might be necessary to satisfy the judgment and costs, after the payment of the $200 owing by Martin. The counterclaim of appellant Arch Beatty was dismissed. From that judgment this appeal is prosecuted.

The first question to be determined is the propriety of the chancellor's judgment granting appellee alimony, and denying the appellant Arch Beatty the relief sought by him.

Appellee proved by a number of witnesses that she cooked for appellant Arch Beatty and his brother, and was in all respects a faithful and dutiful wife. She also proved that she gave appellant Arch Beatty no cause for abandonment, but that he, without making any provision at all for her support, left her in the night-time and went to a distant state.

Appellant Arch Beatty introduced several witnesses,

who testified that while he was away from home on his business trips, and before he left for Oregon, appellee had been seen drinking,.and hugging and kissing other men. He also introduced one witness who claims that after Arch Beatty left for Oregon, he had sexual intercourse with appellee. The majority of the witnesses who testified to the acts of impropriety on the part of appellee prior to the departure of her husband for Oregon, are related to Arch Beatty. They all admit that they desired Arch to win the suit. Two or three of them are shown to have been indicted for various offenses. In some respects their testimony is contradictory. The chancellor, who was on the ground, placed no credence in their testimony, and after carefully weighing their testimony and considering it in the light of their relationship to Arch Beatty, their pronounced bias in his favor, and their character, we see no reason to disagree with the chancellor. Under the statute, two witnesses, or one and strong corroborative circumstances, are necessary to sustain the charge of adultery or lewdness. Only one witness testified to the act of adultery, and he evinced a willingness not to testify if appellee's father paid him for a mule which the father had bought. Not only are this witness' statements such as to leave the mind in great doubt, but the corroborating circumstances are not sufficiently strong to justify the conclusion that the act of adultery took place. It is quite evident from appellant's conduct at the time of the marriage, and from the circumstances surrounding his departure for Oregon, that he abandoned appellee simply because he was dissatisfied with the marriage, and wanted to go. Although advised of this action, he never attempted any defense until the first judgment against him for alimony was rendered. He then sought to defeat appellee's claim, and to establish grounds for divorce in his favor. In view of his previous conduct, and of the unsatisfactory character of the evidence introduced by him, we see no reason to disturb the judgment of the chancellor.

But it is insisted that the evidence shows that the attached property was not the property of Arch Beatty, but belonged to appellant B. P. Beatty. The latter testifies that he purchased the property from Arch Beatty. Arch was indebted to him for money advanced at various times in the sum of from three to five hundred dollars. He purchased the cattle from Arch, and paid him as much as anybody else would pay him. After deducting the

amount of the purchases from the amount of the indebtedness, Arch paid him the balance. Though B. P. Beatty testified very emphatically to the purchase from his brother of the personal property in question, yet his testimony on cross-examination is very uncertain and unsatisfactory. While he claims to have advanced his brother sums of money at various times, he never kept any account of it except in his head, and when he testified, he could only say that his brother owed him between three and five hundred dollars. He is not exactly certain as to what he paid for the cattle, nor is he certain as to the balance which his brother paid. The evidence clearly shows that B. P. Beatty knew that Arch Beatty was going to Oregon. Though he claims to have been unaware of this fact, he admits walking with his brother and others who were with his brother on the night that his brother left. This is not a case where a witness is unimpeached and his evidence is entirely satisfactory. On the contrary, it is a case where the witness' own statements create an impression of the improbability of the facts to which he testifies, and his evidence may be disregarded.

Lastly it is insisted that the court erred in directing a sale of the interest of Arch Beatty in a certain tract of land on the ground that there was a failure to show title in Arch Beatty. The evidence, however, shows that Arch's father bought the land from other parties. They executed a deed to all his father's children, including Arch. While the father bought and paid for the land, the deed was not made to him. He had no title in the land whatever. While the deed was not delivered to the children, the deed was delivered to the father. The children took possession of the land, and occupied it as their own. Under these circumstances, we conclude that the father received the deed as the agent or trustee for his children, and the delivery of the deed to him was sufficient to vest title in the children, including Arch Beatty, even though the deed was not actually delivered to the children, and was not put to record.

Judgment affirmed.