## Bates et al. v. Hall et al.

May 20, 1947.

Rehearing denied October 24, 1947.

R. Monroe Fields, Judge.

Napier & Napier for appellants.

Lewis E. Harvie for appellees.

OPINION OF THE COURT BY JUDGE DAWSON—Affirming.

On the 21st day of November 1936, Hawk Hall executed and delivered to the appellee, Alex Hall, a deed for approximately forty acres of land in Letcher County. Prior to that (the record does not disclose the date) Hawk Hall had executed a deed to this same property to the five appellants who are his grandchildren. When the first deed was executed and acknowledged he delivered it to Bruce Martin, father of appellants, to hold for the grandchildren, as some of the grantees at that time had not attained their majority.

When Bruce Martin advised his daughters that this deed had been executed, the oldest of the five heirs objected to accepting the tract of land as their portion of the Hawk Hall estate. Thereafter Martin contacted the appellee, advising him of the conveyance to his children and of their objections to accepting the property. Appellee offered $400 for the property and thereafter Mar-

tin and Alex Hall went to see Hawk Hall, and the three of them agreed that Hawk Hall would execute a new deed to Alex Hall, and that the previous deed to the five children would be suppressed. The transaction was completed and Alex Hall paid $400 in cash to Martin, with the understanding that he was to pay $80 to each of the five heirs.

Thereafter, and presumably at a time when the children were of age, Martin paid $80 in cash, or its equivalent, to each of his daughters, with the exception of the youngest, Lucy, who did not become twenty-one years of age until the 14th day of January, 1945.

Shortly after purchasing this property the appellee fenced it in and later constructed a dwelling house and outbuildings at a total cost to him of $1,725.

Until three years prior to the institution of this litigation this tract of land was isolated, being some seven or eight miles from a graded road. About three years before this action was filed a graded road was built to the tract, making the property accessible and, of course, more valuable.

All of the grandchildren, except Lucy, lived in the general neighborhood of this property, and the evidence shows that they frequently passed through it, or close to it, so that they knew of all improvements which appellee placed thereon.

This action was instituted in 1945 by the five grandchildren who claim title to the property under the deed from their grandfather.

Upon the foregoing state of facts the circuit court entered the judgment appealed from, which gives to Lucy Martin, the youngest grandchild, an undivided one-fifth interest in the property, and to appellee Alex Hall an undivided four-fifths interest therein. This judgment further provides: ''It appearing to the court that Alex Hall has in good faith erected valuable and lasting improvements on said land of the value of $1725.00 it is further adjudged by the court that he is entitled to the benefit thereof, and that in any future sale of said land, that he be first paid the sum of $1725.00 out of the proceeds of said sale, and that the balance of the proceeds thereof be paid 1/5 to Lucy Martin and 4/5 to Alex Hall,

or that in case of the partition of said land between Lucy Martin and Alex Hall, that Alex Hall shall receive land on which said dwelling house, garden and barn are situated, and that the commissioners making the partition shall not take into account the improvements made on said land by Alex Hall, but shall partition said land as though there were no improvements thereon, allotting 1/5 of the value of said land to Lucy Martin and 4/5 of the value thereof to Alex Hall.''

There are two questions presented by the appeal. 1. Was there a valid delivery and acceptance of the deed from Hawk Hall to his grandchildren? 2. If so, are these grandchildren estopped from claiming title to the land by reason of having accepted their proportionate part of the purchase money paid by appellee, and having stood by for approximately nine years with full knowledge that appellee placed valuable improvements on the property and otherwise exercised ownership thereof?

We are convinced that there was a valid delivery and acceptance of the deed to the granddaughters. The general rule is that where a parent makes a voluntary deed for the benefit of infant children, the law presumes an acceptance by the infants if it is beneficial to the infants. Of course there must be some act by the grantor evidencing his parting with control over the deed, accompanied with an intention to transfer title to the infants. See Justice v. Peters, 168 Ky. 583, 182 S. W. 611, and the authorities cited therein.

The evidence is clear that Hawk Hall delivered the first deed to Bruce Martin, father of the five grantees, some of whom were infants. The circumstances surrounding the execution, acknowledgement and delivery of this deed show conclusively that it was the grandfather's intention to pass title to the property to his grandchildren. Of course it is essential to the validity of a deed that it be accepted by the grantee, but acceptance on the part of a person receiving a deed as trustee for the benefit of infant grantees is sufficient to vest title in them. See 26 C. J. S., Deeds, sec. 51, p. 254, and Chambers v. Burke, 194 Ark. 665, 109 S. W. 2d 117. Clearly, title to this property passed to the grandchildren of the grantor.

Where there has been a duly executed and delivered

deed to real property, a reconveyance by the grantee is necessary in order to divest him of the title, and the destruction of the deed purposely, or otherwise, does not have the effect of reinvesting the title in the grantor. McHargue v. McHargue, 269 Ky. 355, 107 S. W. 2d 278, and the cases therein cited. Thus, the destruction or suppression of the deed to the grandchildren by their father did not reinvest title to the property in Hawk Hall, and we are of the opinion that the subsequent deed to appellee was ineffectual.

Having reached this conclusion it is necessary to consider the second question raised. In doing so we are handicapped by the failure of the record to disclose the birth dates of the five grandchildren, and therefore can not say with certainty when each arrived at her majority. The circuit court made no finding of fact in this respect, but, in view of the judgment, we conclude that all of these grandchildren, with the exception of the youngest, were of age when they accepted their proportionate part of the $400 consideration paid by appellee for the property, and had attained their majority at the time, or shortly after, appellee commenced to place improvements thereon.

We think the evidence clearly shows that four of the grandchildren knew that appellee was improving this 40 acre tract of land, and there is no evidence to show that any of them ever protested, raised any objection, or asserted title to the property until shortly before this action was filed.

Appellee's first act after purchasing the property from Hawk Hall was to build a good wire fence around the entire tract, and shortly thereafter he constructed a substantial house and barn thereon. As indicated above, these four grandchildren lived in the immediate vicinity of this property and passed by or through it frequently, but for a period of approximately nine years raised no protest whatever against the actions of appellee, during which period appellee exercised ownership and paid all taxes on the property.

Some attempt is made to question the good faith of appellee in acquiring ownership of the property, but the evidence wholly fails to support any such conten-

tion and, on the contrary, establishes the absolute good faith of appellee. He did not know the legal effect of the suppressed deed, and we think the evidence clearly shows that Alex Hall believed that he had acquired title to the property. His every action supports this view. Under these circumstances we think the grandchildren, with the exception of the youngest, are estopped, by their silence and inaction, to now assert title to the land.

In 19 Am. Jur., Estoppel, section 57, page 668, this rule is stated as follows: "The courts are especially disposed to uphold a claim of estoppel by silence or inaction where one party with full knowledge of the facts has stood by without asserting his rights or raising any objection while the other party, acting on the faith of such apparent acquiescence, incurred large expenditures which will be wholly or partially lost if such rights or objections are subsequently given effect. This principle finds frequent application in respect of improvements and expenditures upon real property under a claim of right and will be further considered in that connection in a subsequent section."

It is an almost universal rule that one who stands by and sees another purchase land and permits, without objection, such purchaser to make improvements under circumstances which would call for protest, can not afterward assert his own title against such person. See 19 Am. Jur., Estoppel, section 133, page 787, and the many authorities therein cited. See also 50 A. L. R. 862, etc., and 76 A. L. R. 306, etc.

The judgment gives effect to the conclusions herein reached, including an adjudication that the youngest granddaughter, Lucy, who did not become twenty-one years of age until shortly before this action was instituted, who was not paid her portion of the purchase money, and who lived some distance from the tract of land involved, is in a different position than her four sisters. The judgment protects her rights by awarding her an undivided one-fifth interest in the land.

On the whole, we feel that the chancellor arrived at a just and equitable solution of this controversy. His judgment, under the facts disclosed by the record, is proper, and it is affirmed.