**Hattie WHITE, Individually, et al.,
Appellants,**

v.

**Elijah M. HOGGE, Administrator of Estate of Guar Fyffe, et al., Appellees.**

Court of Appeals of Kentucky.

June 1, 1956.

Diederich & Lycan, Ashland, for appellants.

Lester Hogge, Morehead, B. E. Mullins, W. A. Johnson, Paintsville, James H. Moore, Jr., Ashland, for appellees.

Diederich & Lycan, Ashland, for Rainbow Production Corp.

CULLEN, Commissioner.

The judgment appealed from determined the rights of the widow and children of Robert Fyffe, deceased, in certain real estate he had owned during his lifetime. Involved in the determination were Robert Fyffe's will, two deeds executed by him prior to his death, and the statutes of descent, particularly KRS 391.020(2) and 391.050. The statutes of descent were involved because one of the children, an infant, died shortly after his father's death. This child, and two brothers, were children of Robert Fyffe by a second wife. There also were four other children by a first wife.

The judgment determined the rights of the parties on the basis that the two deeds in question were invalid because of non-delivery, and on the basis that the share the deceased child received under the will

passed in equal shares to the other six children of Robert Fyffe as ancestral property, under KRS 391.020(2). The widow and the two children by her contend that the deeds were validly delivered; also that under KRS 391.050 the other four children should have received only half-shares in the estate of the deceased child. The widow also claims an interest by inheritance from the deceased child.

Robert Fyffe's will was executed in April 1948. It devised his entire estate to his widow and to his three children by her (Guar, Homer and Cassie), in equal shares, with a provision that if his widow should remarry her share should go to the three children in equal shares. The four children by his first wife were expressly excluded from any share in his estate.

In August 1948 Robert Fyffe executed deeds (in which his wife joined) conveying one tract of his land to his son Guar, and the remaining tracts to his sons Homer and Cassie. The deed to Guar contained this clause:

> "Life control of the said lands is reserved by the grantors so long as either or both of them may live and this includes all rentals and royalties and income from or connected with the oil and gas under said lands. But the life control reserved by and in favor of Hattie Fyffe shall continue only so long as she remains the widow of Robert Fyffe. After the termination of said life controls, the rentals, royalties and income from the said property from oil and gas is to go in three equal parts to the grantee, Guar Fyffe and his two brothers, Homer Paul Fyffe and Cassie Francis Fyffe."

The deed to Homer and Cassie contained a similar clause.

The circumstances with respect to the alleged delivery of these deeds will be discussed at a later point in this opinion.

In March 1950 Robert Fyffe died.

In 1953 the widow remarried.

In 1954 the son Guar, an infant, died intestate.

The basic questions concern what interest Guar had in the estate, and what happened to his interest upon his death. Initially, these questions depend upon whether the deeds were validly delivered.

The widow was the only witness to testify concerning delivery. She said that following execution of the deeds she, at her husband's request, put the deeds in a lock box in the bank. Previously she had put the will in the same box. The deeds and the will were the only things kept in the box. Her husband had arranged for the rental of the box, but she kept in her possession the only key to the box. After the deeds had been put in the box they remained there until after her husband's death, when she removed them and had them recorded.

At the time the deeds were executed the three children named as grantees were, respectively, ten, six and two and one-half years of age. The widow was asked, in her deposition, "Were you taking care of these deeds for yourself and your children?", and answered in the affirmative.

We think it is clear that a valid delivery was effected if Robert Fyffe, in handing the deeds to his wife with directions to place them in the lock box, intended to relinquish control of the deeds. In the absence of any express statement of intent, the question must be determined by an evaluation of all the circumstances, and in so doing resort may be had to certain so-called presumptions.

■ In the case of voluntary deeds, particularly family settlement deeds, the law presumes more in favor of delivery than in the case of deeds of bargain and sale. Preston v. Harlow, 276 Ky. 799, 125 S.W.2d 726; 26 C.J.S., Deeds, § 183, p. 592.

■ The fact that a deed contains a reservation of a life estate in the grantor has been held to create a strong presumption of delivery, on the theory that the reservation indicates an intent that title should immediately vest in the grantee. 26 C.J.S., Deeds, § 183, p. 592.

■ In Pittmon v. Flowers, 131 Ky. 804, 115 S.W. 786, it was held that where a deed conveying land to an infant was delivered to the infant's mother, with no specific directions, there was a presumption of delivery to the child. See also Beatty v. Beatty, 151 Ky. 547, 152 S.W. 540, and Bates v. Hall, 305 Ky. 467, 204 S.W.2d 487. It is true that in the last three cases the grantor was a person other than the parent of the child, but the cases nevertheless are in point on the proposition that the law favors a finding of delivery where the grantee is an infant. There is considerable authority from other jurisdictions recognizing a presumption in favor of delivery where the grantee is an infant, especially where the grantor is the parent. 16 Am. Jur., Deeds, sec. 385, p. 656.

Another fact in the case before us, supporting a finding of delivery, is that the wife was herself a partial grantee, who was entitled to accept delivery on behalf of all the grantees. 16 Am.Jur., Deeds, sec. 150, p. 522.

We think some significance can be given to the fact that Robert Fyffe, after he had handed the deeds to his wife, did not attempt to exercise any further control over the deeds, or do any act inconsistent with the view that he had made an effective conveyance to his sons.

■ In view of all the circumstances, we are constrained to hold that a valid delivery of the deeds was effected, and that the lower court erred in its holding to the contrary.

■ The next question concerns the devolution, upon Guar Fyffe's death, of the property he received under the deed to him, and under the will. Because Guar was not named as a grantee in the deed to his brothers, and they were not named as grantees in the deed to him, the attempted disposition of part of the oil and gas royalties, by the deeds, was ineffective, and thus a share in this part passed to Guar under the will. See Sword v. Sword, Ky., 252 S.W.2d 869.

■ The lower court held that since the property Guar received, both under the deed and under the will, was derived by gift or devise from his father, it passed to the father's kindred under KRS 391.020(2), and since the four children by the first wife bore the same relationship to the father as the two surviving children by the second wife, each of the six received an equal share. The appellants maintain that KRS 391.050 also must be considered, and therefore the four children by the first wife, being collaterals of the half blood as to Guar, should receive only one-half shares. It is their contention that KRS 391.020(2) operates only to *exclude* the mother's kindred, and that the surviving children take, not as lineal descendants from the father, but as collaterals on the father's side.

■ The contention of the appellants is supported by Talbott's Heirs v. Talbott's Heirs, 56 B.Mon. 1, and King v. Middlesborough Town & Lands Co., 106 Ky. 73, 50 S.W. 37, 1108. However, upon reconsideration of the question, it is our opinion that those cases made an erroneous interpretation of the statutes, and they hereby are overruled. We think that KRS 391.020(2), in stating that the estate "shall descend to that parent and that parent's kindred," means what it says, and that the descent is to be determined in accordance with the relationship of the kindred to the parent rather than to the deceased child.

■ A contention advanced on behalf of the widow is that the interest created in her, by the deeds, in the oil and gas royalties, was something in excess of or different from an ordinary life estate terminable on remarriage; that upon her remarriage this interest did not terminate but remained in existence as a separate estate for the remainder of her life, and passed to her three children as a "shifting use." Accordingly, she argues, when Guar died *she* inherited, either under KRS 391.010 or 391.020(2), his share of this shifting use estate.

We think this argument employs too much artificial theory of the law of property to warrant acceptance. The clear meaning

of the deeds is that upon the widow's re-marriage, her interest should *terminate*. Whatever interests Guar received in the property he received by gift or devise from his father, and not from his mother.

The parties seem to be in agreement as to what fractional division of the property will result from the conclusions we have reached in this opinion, so there is no need to encumber the opinion by an enumeration of the fractional share each child will receive.

The judgment is reversed in part and affirmed in part, with directions to enter a judgment in conformity with this opinion.

HOGG, J., not sitting.