[File No. 6741.]

GEO. B. McMILLEN, as Administrator of the Estate of J. W. Chamberland, Deceased, Appellant-Respondent, v. PARIS E. CHAMBERLAND and William B. Chamberland, Respondents-Appellants.

(298 NW 767)

Opinion filed June 21, 1941

*Walter O. Burk,* for appellant-respondent.
*Wm. G. Owens* and *Everett E. Palmer,* for respondents-appellants.

BURR, Ch. J. The issue to be determined is whether an instrument in the form of a warranty deed was delivered by the decedent to the defendants so as to pass title to the land involved.

For many years prior to 1921, John W. Chamberland, hereafter known as the father, was the owner of "Lots Numbered One (1), Two (2), Five (5), and Six (6), and the South Half of the Northeast Quarter ($S\frac{1}{2}NE\frac{1}{4}$) and the North Half of the Southeast Quarter ($N\frac{1}{2}SE\frac{1}{4}$) all in Section Thirty (30), and the North Half of the Southeast Quarter ($N\frac{1}{2}SE\frac{1}{4}$) and Lots Numbered Three (3) and Four (4) of Section Nineteen (19), all in Township One Hundred Fifty-four (154) North, of Range One Hundred One (101) West . . . The East Half of the Northeast Quarter ($E\frac{1}{2}NE\frac{1}{4}$) and the East Half of the Southeast Quarter ($E\frac{1}{2}SE\frac{1}{4}$) of Section Twenty-four (24), in Township One Hundred Fifty-four (154) North, of Range One Hundred Two (102) West."

On January 13, 1921, his wife died. The defendants are his sons, and are so designated hereinafter.

On October 29, 1921, the father executed and acknowledged an instrument purporting to be a warranty deed, which on its face conveyed to the sons the land afore described. It is undenied that if such

instrument was "delivered" to the sons on that day, then they are the owners of the land.

On the forenoon of November 16, 1921, the father married Lena Lowe, and thereafter they lived on the land in question until the day of his death, February 27, 1940—the residence, with the buildings and appurtenances, being situated on Lots 1, 2, 5, and 6 of Section 30, Township 154, Range 101.

On March 8, 1940, this deed was filed with the Register of Deeds of Williams county, and recorded that day.

The plaintiff, the administrator of the estate of the father, brings this action to quiet title to all of the land, claiming the father was the owner at the time of his death.

The answer alleges the execution and delivery of the deed; that title to the land is in the sons; and that ever since the execution and delivery of the deed, they have been the owners in fee simple. It further states the plaintiff, ever since March 15, 1940, has had possession of the premises and collected the rents and profits to their damage in the sum of $1,500.

Plaintiff replied, denying that the deed was ever delivered to the sons, and alleging that at all times during his lifetime, the father had "expressly retained full and complete control over said deed, and that if in fact there was a delivery said delivery of said deed was conditional and the conditions upon which said deed was delivered have never been fulfilled."

The trial court found the deed had been in fact delivered to the sons by the father in October, 1921; but also found that the second wife was entitled to a homestead interest in the lots described as being in section 30.

The court quieted title in the defendants as against the plaintiff and the estate, "excepting the rights of Lena Lowe Chamberland as hereinbefore specified;" and determined that the defendants were entitled to recover possession of the rents and profits of the land, "subject only to the homestead rights of Lena Lowe Chamberland as herein defined."

Judgment was entered accordingly. The plaintiff appeals, challenging the finding that there had been a delivery of the deed, and the

defendants appeal, challenging the finding that Lena Lowe Chamberland has a homestead interest in the land.

The case is here for a trial de novo, and, therefore, the findings of the trial court, while not binding upon this court, are entitled to appreciable weight, owing to the better opportunity the trial court had to observe witnesses and weigh their credibility. See Southall v. Mickelson, 68 ND 191, 277 NW 601, 120 ALR 693.

The crux of the case is whether there was a delivery of the deed in issue. This "depends upon the intention of the grantor, which is mainly a question of fact." McGuigan v. Heuer, 66 ND 710, 268 NW 679.

There are very few facts in dispute. The mother of the sons died in January, 1921. The father was the owner of the land at that time. In July of 1921 he and Lena Lowe agreed to intermarry. On October 29, 1921, he executed the deed in question. This is the date stated in the deed, and the date stated in the certificate of acknowledgment by the notary public who took the acknowledgment. In default of any showing to the contrary, the statements made in the acknowledgment of the deed are presumed to be correct. In this case no attempt is made to impeach the execution of the deed, and the certificate of acknowledgment is regular on its face. Such a certificate is presumed to state the truth, and proof to overcome it must be very strong and convincing. See Severtson v. Peoples, 28 ND 372, 148 NW 1054; Hassen v. Salem, 48 ND 592, 185 NW 969; Cox v. McLean, 66 ND 696, 268 NW 686.

No evidence being offered to show any other date, the provisions of § 7936, Comp. Laws, 1913, regarding "denominational presumptions," apply, and it is presumed that "a writing is truly dated." (Sub. 23.)

As to the presumption arising from the date of the deeds, see Leonard v. Fleming, 13 ND 629, 102 NW 308.

Section 5496 of the Comp. Laws provides: "A grant duly executed is presumed to have been delivered at its date." The statutory provisions that a grant takes effect upon delivery by the grantor, that it is presumed to have been delivered on its date, and that it cannot be delivered conditionally, are all discussed in Meyer v. Russell, 55 ND 546, 214 NW 857.

In addition to presumptions, we have the testimony of the sons themselves. The son Paris testified that at various times after the death of his mother, and before October, 1921, his father stated he was going to remarry, and intended to deed the land in question to the sons; that in October his father asked him to meet him at the old First National Bank building in Williston, and to have the brother with him; that the boys met the father there, and Messrs. Davidson, Harding and Grantier were present; that the father had the deed with him and handed the deed to his brother, telling what the deed contained; the brother handed it to the witness; and then either he or his brother gave it to Mr. Davidson in the presence of two men by the names of Owen Harding and Stephen Grantier. He was not quite certain whether he or his brother gave the deed to Grantier or Harding, who then gave it to Davidson; or whether one of the brothers handed the deed to Mr. Davidson with orders to keep the deed till called for. The testimony of the other son and of Mr. Davidson is to the same effect. Neither Harding nor Grantier testified.

The sons admit the father thereafter paid the taxes on the land, paid the insurance on the buildings, and kept and retained all the profits from the crops; but their claim is that this was because of an oral agreement on their part that he should have the use of the land as long as he lived. The sons admit that the father and wife Lena gave a deed to the state for a few acres for road purposes, after consultation with them.

It is the contention of the sons that this agreement to use the land was not a condition to the delivery of the deed; that the deed was delivered unconditionally; that they, their mother, and their father had accumulated this property, and the father used it until the date of his death.

It is undisputed that this meeting was had October 29, 1921, unless the testimony of W. S. Davidson shows a different date, to-wit: November 16, 1921, though if there were a delivery on either date, the time is not material so far as this case is concerned. Davidson placed the deed in his own private deposit box, and after the death of the father, gave the deed to the sons. Paris took the deed to the Register of Deeds' office for recordation; and after the deed was recorded, it was

returned to him. He intended to keep it and the abstracts, but some question was raised by the administrator as to the right of ownership of the land, and plaintiff asked him to put the papers back into the box and give them to him, which he did. Hence there is no weight to be attached to the fact that the plaintiff produced the deed upon the trial of the case.

The administrator does not claim his physical possession of the deed was because of any act or dealing of the grantor entitling plaintiff to possession. It was rather a voluntary, friendly act on the part of Paris so as to obviate complication of issues.

"Where a grant of land, made by deed and duly executed, is produced by the grantee at the trial and offered in evidence, it is presumed to have been delivered at its date, and such date is presumed to be the true date." Cox v. McLean, 66 ND 696, 268 NW 686, supra.

Davidson claims he held the deed in escrow. Section 5498, ND Comp. Laws, 1913, provides: "A grant may be deposited by the grantor with a third person to be delivered on the performance of a condition and on delivery by the depositary it will take effect. While in the possession of the third person and subject to condition it is called an escrow."

The basis for Mr. Davidson's testimony, as stated by the witness himself is that he first saw the deed in the bank in possession of the father on the day the parties met—the day the father was married—that the boys and the father were present; that the father stated to him at that time he intended to give the boys the land, "and the personal property to Lena;" that at the time the deed was delivered to him for safekeeping, he made a notation in regard to the transaction. Accordingly, he drew up what is known as Exhibit 5:

"November 16, 1921

"Received from John W. Chamberland, Paris E. Chamberland and William E. Chamberland the following warranty deeds:

"Deed covering 320 acres of land in McHenry County, N. Dak.

"Deed covering 600 acres of land in Williams County, N. Dak. The deeds are both dated October 29th, 1921. The said deeds are left in escrowal with the First National Bank of Williston, N. Dak. subject

to the demands of Mr. John W. Chamberland who has the right to withdraw the deeds at any time.

"If the said deeds are not withdrawn by John W. Chamberland they are to become the sole property of Paris E. Chamberland and William E. Chamberland upon the death of John W. Chamberland.

"The First National Bank, Williston, N. D.

"
W. S. Davidson
_____
Vice-President

"
F. E. Stewart
_____
Ass't Cashier                "

As pointed out in O'Connor v. McCabe, 46 ND 289, 192 NW 370, 371, "it is well settled that a person may make a conveyance of property and place it in the hands of a third party to be delivered to the grantee named in it on the death of the grantor and that such a delivery will be effectual to pass a present title to the property to the grantee, if the intention of the grantor is to make such delivery absolute and place it beyond his power thereafter to revoke or control the deed. Where delivery is made under these circumstances and with this intention, it is fully operative and effective to vest a present title in the grantee, the grantor retaining only a life estate in the property, and the third party or depositary holds the deed as a trustee for the grantee named in it."

But Ex. 5 negatives "escrowal." If this Ex. 5 states the facts correctly, it more nearly portrays an undelivered deed than a deed in escrow. This is Davidson's version of what the father said to him at the time of the alleged delivery of the deed, and he stated the boys were present. The sons claim they knew nothing whatever about this until after their father died. We do not pass upon objections to the reception of Ex. 5 in evidence.

On cross-examination Davidson testified the father delivered the deed first to one of the sons, he was not sure which one, and that one delivered it to the other son, and then the sons handed the deed to him. Davidson testified that Exhibit 5 was drawn the day the father was

married; that it was made in duplicate, that one of the pair was placed in the deposit box which the father had in the bank, and the other in the envelope containing the deed, and kept by him. He testified specifically that the father had a private deposit box in the bank, but that the deed was not placed in that box; that he had possession of the deed from that day until after the death of the father, when the interested parties met at the home of Armittie Chamberland, aunt of the boys; that the father never had it again in his possession, and never asked for it; and that he delivered the deed to the boys at their aunt's home. It is strange that if the father did not intend to deliver the deed to the boys he would go through the ceremony of handing the deed to one son, the latter pass it to the other, and he to Davidson, who did not place it with the father's papers, but with his own, and indorsed the envelope as the property of the sons. There is no dispute as to this ceremony. The record shows without dispute this envelope was indorsed "W. B. Chamberland and P. E. Chamberland," indicating the contents belonged to the sons, and not to J. W. Chamberland.

It may well be that after some eighteen years witness Davidson may not have remembered all the facts accurately. It is quite possible that on the sixteenth of November, after the father was married, he drew up Exhibit 5, attempting to state what he had recalled of the conversations. It was a matter of prudence on his part. He testified that the contents of Exhibit 5, which he terms a receipt, were the only written instructions he had, and which he wrote out himself; that the father accepted a copy thereof, Ex. 6; that he thought probably Exhibit 5 in duplicate had been drawn up before the boys came to the bank, at least it might have been, and was clearly of the impression that it was all one transaction. It would not be surprising that a third person became confused after that lapse of time.

Mr. Davidson testified that after the death of the father, he stated to the aunt, Armittie Chamberland, that the father had given some deeds to the boys.

A witness by the name of Frank Lowe, father of the widow, testified that he was present in Armittie Chamberland's home, after the death of the father, and when the boys were present; that Mr. Davidson was there, and when the deed was taken out of the safety deposit box, he

"pushed it over on the end of the table, near Paris, and he said that that belonged to the boys;" and that Davidson said, "That's the boys'. They are to get the deeds and you, Lena, is to get the personal property," and that one of the boys said, "Well, if that's the way dad wanted it."

The widow testified that Davidson told the group the boys were supposed to have the land and she was to have the personal property. She asked the boys if they were satisfied. Paris did not say a word, but Billy said, "Yes, if that's the way dad wanted it to be," it was all right.

Later she testified Paris talked with her about the division, but this was because the sons were not getting any part of the money. She said that the next morning after this meeting, Paris asked her if she "didn't think they should have part of the money that was there," and she said if that was the way her husband had told Mr. Davidson, she felt it was the way it should be; and Paris told her a lawyer had stated she and the sons were entitled to a third each. There are many expressions indicating decedent's intent as to future testamentary disposition of the personal property at least, but here we are concerned solely with the question of delivery of a deed.

Apparently whatever discussion there was regarding the division of the property there was not a dispute over the delivery of the deed, but of what was in the estate, some possible dissatisfaction on the part of the boys, that the boys thought they were not getting anything from their father's estate, or, as Paris stated—there being no will, they supposed they would share in the estate. Having the land beforehand, apparently he thought the sons were entitled to some share in the personal property.

The son William testified that Mr. Davidson's version of the transaction set forth in Exhibits 5 and 6, so far as it attempts to show witness' knowledge of instructions and their draft, is not correct; that he never saw or knew of either of those exhibits until that day he was testifying; that he did not see them at the time the box was opened; that "Bill Davidson was supposed to keep the deeds in his possession" for safe-keeping. He denied that there was any understanding on his part that the widow was to get the personal property.

Paris testified to the same effect with reference to Exhibits 5 and 6.

He also testified that he brought his father to town the day that he was to be married, and that this was not the day that the deeds were delivered to the boys; they had been delivered before.

Defendants, however, do not rely on a delivery in escrow, even though this record shows the witness Davidson had physical possession of the deed at the time of the father's death, and immediately thereafter delivered it to the sons. The evidence in the case is more compatible with the theory the sons delivered the deed to Davidson on October 29, 1921, immediately after the delivery of it to them by their father for safe-keeping, and as their property, and because of the understanding that the father could live on the land as long as he cared to do so, than with the theory that the father delivered the deed to Davidson intending to retain possession of the deed, for there is no evidence the father attached any condition to the delivery of the deed, other than the statement in Ex. "A," confessedly made by Davidson and not signed by the father. There is nothing in the record indicating that the sons or the father even suggested to Davidson that he should draw up such statement, or that they authorized it.

Such delivery as contended for by the sons is not negatived by the mere fact grantees did not take immediate possession of the land, nor record the deed when delivered to them. See Cale v. Way, 46 ND 558, 179 NW 921.

"In order to establish delivery it is not necessary to show the grant was actually delivered into the possession of the grantee if the deed is delivered to a third person for the benefit of the grantee and the assent of the grantee is shown, or may be presumed." McGuigan v. Heuer, 66 ND 710, 711, 268 NW 679.

In the case at bar there is no definite, clear-cut explanation as to the reasons why the father was to remain on the land. The son, William B., testified to an agreement and understanding, and that the father consulted him regarding fences and other improvements.

The whole transaction shows pleasant relations and perfect understanding between the father and sons. The father was intending to remarry; he wanted the sons to have the land, as it had been purchased partially by the property of their mother, and built up to some extent by the efforts of the sons.

It is not claimed there is sufficient evidence to show a life estate in the property was retained by the father in any executed instrument fully defining such an estate; but even if the rather vague evidence could be construed as the retention by the father of a life estate, nevertheless, this did not prevent the attempted delivery from being a good delivery.

"Transfer is an act of the parties or of the law by which the title to property is conveyed from one living person to another." N. D. Comp. Laws 1913, § 5488. When made in writing, it is termed a "grant;" and such grant "takes effect so as to vest the interest intended to be transferred only upon its delivery by the grantor." N. D. Comp. Laws 1913, § 5496.

We do not have "conditional delivery." Section 5497, N. D. Comp. Laws 1913, provides: "A grant cannot be delivered to the grantee conditionally. Delivery to him or to his agent as such is necessarily absolute; and the instrument takes effect thereupon, discharged of any condition on which the delivery was made."

See Nord v. Nord, 68 ND 560, 568, 282 NW 507, 511.

As pointed out in Keefe v. Fitzgerald, 69 ND 481, 482, 288 NW 213, a deed is of no effect unless it is delivered; but the delivery may be accomplished by words or acts, or both, and if once delivered is returned to the grantor for some specific purpose, such as for safe-keeping, does not destroy the effect of the delivery, for "If the grantor makes a manual delivery to the grantee of a deed absolute in form, intending to part with all authority and dominion over the instrument, the delivery is absolute and title passes immediately in accordance with the terms of the deed notwithstanding any intention or understanding that the operation be delayed until the happening of a contingency."

In the case cited, the basic legal principles governing delivery are set forth.

The trial court found that the deed was executed and delivered on October 29, 1921. Despite the conflict as to dates, and after weighing carefully all of the actions of the father and the acquiescence of the sons, we find that in fact the deed was executed and delivered on October 29, 1921, as found by the trial court; the delivery operated to trans-

fer the title to the sons as of that date; and any right which the father had to occupy the land and receive the rents and profits arose from an agreement made between the sons as the owners of the land with the father personally. Accordingly, the judgment of the trial court quieting the title in the sons is affirmed.

With reference to the judgment of the court decreeing a homestead interest in a portion of the land to Lena Lowe-Chamberland, we find from the record that there is no basis for such adjudication. She was not the wife of the father when the deed was executed; she is not a party to this action. She has not intervened in any manner, nor is she asking for homestead rights. As between father and sons, the land was transferred to the sons before she became the wife of the father; and there is no claim in this action of any deceit or fraud perpetrated upon her through any alleged transfer of the father's property to the sons just prior to her marriage. In fact, the record shows good relationship and feeling between the sons and the stepmother.

The stepmother was a witness in the case. She testified that at times during their married life, the father spoke of the land as belonging to the boys, but she was unable to give any definite statement as to why she got the impression the sons were to have the land after the father died. She knew nothing about the deed, and testified that the existence or the nonexistence of the deed would have made no difference in the marriage relationship and had no bearing upon her decision to marry the father.

Not being a party to the action, the interests of the stepmother are not affected. If she has any claim that the deed was in fraud of her rights, or that she is entitled to a homestead interest in the land, such matters are undecided in this case. The judgment of the lower court with respect to the homestead interest is reversed.

Accordingly, it is the judgment of this court that title to the land be quieted in the defendants, that they are entitled to the rents and profits of the land during the time it has been in the possession of the plaintiff, the amounts thereof to be determined; and, further, that the judgment of the lower court is modified by eliminating the provision for the homestead interest for Lena Lowe Chamberland, leaving unde-

.termined. any ·rights· which·.she may have· in the premises. ' The case .is remanded to the district court,. and judgment will be entered· accord-.ingly. .

CHRISTIANSON, MORRIS, BURKE, and NUESSLE, JJ., concur..