(No. 28002.—

MADELINE M. CREIGHTON, Appellant, *vs.* MARY C. ELGIN *et al.,* Appellees.

*Opinion filed September 19, 1944.*

Burgess, Loy & Burgess, of Fairfield, for appellant.

Mills, Umfleet & Mills, of Fairfield, for appellees.

Mr. Justice Smith delivered the opinion of the court:

This is a direct appeal from a decree of the circuit court of Wayne county. A freehold is involved. The issues presented are the ownership of three separate properties, iden-

tified in the record as the "home place," the "Crews farm" and the "Poe lot." The properties will be so referred to in this opinion. The first tract, identified as the home place, consists of 340 acres of farm land. The second tract, identified as the Crews farm, consists of 160 acres of farm land. The Poe lot is a town property located in the city of Fairfield.

The facts in the record with reference to the home place show that this property belonged to Judge J. R. Creighton on February 25, 1918. On that date, C. W. Creighton, who was an attorney and notary, and Judge Creighton's nephew, by direction of Judge Creighton, prepared a deed. This deed was signed and acknowledged by Judge Creighton and his wife at that time. It purported to convey to their two sons, namely, Edward W. Creighton and John M. Creighton, in equal parts, as tenants in common, all the land constituting the home place, as identified in the record. The deed also included other properties not involved in this case. The record shows that neither of the grantees was present at the time the deed was executed. The testimony of C. W. Creighton, with reference to the signing of the deed and what was done with it after it was executed, shows that Judge and Mrs. Creighton signed the deed in his presence; that he completed and signed the notarial certificate and attached his seal; that he then handed the deed to Judge Creighton; that Judge Creighton handed it to Mrs. Creighton and told her to take care of it until John returned. John was then serving in the United States army in France. The record further shows that Judge Creighton was ill at that time.

Subsequent to the execution of the deed, Judge Creighton and his wife conveyed to others, at different times, several tracts of the lands described in the deed. He continued to treat all the land which he had not conveyed to others as his own until his death. His death occurred on April 14, 1920. He left surviving, Lucretia E. Creighton,

his widow, John M. Creighton and Edward W. Creighton, his sons, and Mary Creighton (now Elgin,) his daughter, as his only heirs-at-law. He left a will in which he devised his entire estate to his wife, Lucretia. His will was duly admitted to probate. All of the lands described in the deed, which had not been conveyed to others by Judge Creighton in his lifetime, passed under his will to his wife. Mrs. Creighton took possession of the property under the will. There is evidence which tends to show that she claimed and operated it as her own until her death. There is also some evidence in the record which tends to show that, during a part of the time subsequent to the death of Judge Creighton, all of the properties in Wayne county which had formerly belonged to him were managed and operated by John M. Creighton; that he reported and accounted to his mother the collection of rents, the condition of the properties and the expenses incurred from time to time; and that he consulted her with reference to the business in connection with the properties.

Sometime after Judge Creighton's death, Mrs. Creighton, the son Edward and the daughter Mary, moved to California where they resided until Mrs. Creighton's death in 1943. After the death of her husband, Mrs. Creighton conveyed at least two of the tracts of land described in the deed executed on February 25, 1918, to other parties. One of these deeds was made pursuant to a contract for deed entered into by Judge Creighton in his lifetime.

The record does not disclose anything further in regard to the deed of February 25, 1918, until sometime in 1935, when John received an undated letter from his brother Edward, who was then in California. This letter, in so far as material, is as follows:

"No doubt you will be supprised to receive a letter from me but a condition exists here that we must do something about if we are to save anything of the property that father left. The situation is this—The bank who holds the mortgage on the Hollywood house has for closed & we had a hearing and got a stay of

sale until Feb 1, 1936. After that time they can sell the place and enter a difficiency judgment for the difference between what the place brings and the amount of the mortgage. This might amount to 3 or $4000 and a judgement of anything like this amount would be financial suicide for this family.

"I have conferred with our attorney and mother Mary and I have gone into executive session and the following seems to be the best plan.

"In 1918 father was taken seriously ill and thot he was going to die. He called Charlie and had him make out deeds jointly to you and me to the farm land. These deeds are still in existence and held by mother but have never been put on record. In order to protect ourselves my idea is this—To put these deeds on record. Then you & I to give Mary a mortgage on the farms. . This will protect us from my creditors as I owe both the Carmi and Fairfield banks money. I think the mortgage should be for $8000.00. What do you think? Along with the recording the deeds we should give mother a statement or contract stating she is to receive the income from the property during here life time as this is about all the income she has.

"That would cover the property except the Kennedy farm the Durnell place and the Moore home. My idea she to deed one of these to each of us, you to take first choice Mary second and I will take what is left. The federal Home loan Bond if unregistered will take care of itself but if registered should be transferred. Will you find out? This is rather an involved subject to take up in a letter but it seems clear to me and I hope it is to you. Let me hear from you in the very near future if you agree to the plan if not let me have your plan."

Whether John made any reply to that letter, the record does not disclose. John also received a letter from his sister Mary, dated November 20, 1935, in which she stated:

"Am adding a few lines to mother's letter as I want you to understand that the mortgage on the farm is only for protection and will not be binding on my part—unless the Bank should get the rest of the property—in which event I think I should share in the farm land—although not to the extent of $8000.

"In fact, I thought $8000 rather high, but Edward did not feel that way about it, as he thought if it were less, it would probably be attached."

On January 13, 1936, the deed executed by Judge Creighton and his wife on February 25, 1918, was filed

for record in the recorder's office of Wayne county. There is no proof in the record as to who filed the deed for record, or from whom it was received by the recorder, or what was done with the deed after it was recorded. On the same day a deed from Edward to Mary, two deeds from the mother to Mary and one deed from the mother to John were filed for record. Another deed from the mother to Mary was filed for record on January 30, 1936. Each conveyed to the grantee named therein certain property located in Wayne county, Illinois. The deed from Edward to Mary was dated December 28, 1935. The three deeds from Mrs. Creighton to Mary and the deed from Mrs. Creighton to John were all dated December 25, 1935. All five of the deeds were acknowledged on December 28, 1935, before the same notary. The deed of Judge Creighton and wife to Edward and John, dated February 25, 1918, the deed from Edward to Mary, two of the deeds from Mrs. Creighton to Mary and the deed from Mrs. Creighton to John were filed for record at 3:30, 3:31, 3:32, 3:33 and 3:34, P. M., respectively.

The original deed of February 25, 1918, was offered in evidence on the trial of this case. That original deed is in the record. On the outside of the deed just below the recorder's certificate the word "call" is written. There is nothing in the record, however, to show who filed it or who had possession of it or produced it, or from whom or whence it was obtained. There is evidence in the record which tends to show that after this deed was recorded John continued to manage the properties and to report to his mother in connection therewith, and that he also transacted other business for her in Wayne county.

John M. Creighton died October 7, 1941. He left a will in which, after the payment of his debts, he bequeathed and devised all of his property to his widow, Madeline M. Creighton, the appellant here. His will was duly admitted to probate and his estate is now in process of administration.

On April 28, 1943, appellant Madeline M. Creighton, filed this suit. She alleged that under the deed executed by Judge Creighton and wife on February 25, 1918, title to the property identified in the record as the home place vested in John M. Creighton and Edward W. Creighton, the grantees named in said deed. She claimed to be the owner of the one-half interest which vested in her deceased husband, as sole devisee under his will. She asked for partition. She also alleged that during the life time of her husband, an agreement was entered into between Lucretia E. Creighton, Mary C. Elgin, Edward W. Creighton and John M. Creighton, in which she joined as his wife, concerning the division of any funds received from oil produced from any lands owned by them, under which each of the parties was to receive one fourth. This contract was to be in force for a period of ten years from September 20, 1938. There is no dispute in the record concerning this contract; all the parties recognize its validity and agree that their interests in any land involved are subject to this agreement.

Lucretia E. Creighton died June 2, 1943, leaving a last will and testament, in which she bequeathed and devised all of her property to her son Edward and to her daughter Mary, who were her only surviving heirs. She made no specific disposition of the home place in her will.

Thereafter, on June 24, 1943, Mary Creighton Elgin and Edward W. Creighton filed their answer and counterclaim to the complaint. By the answer the material averments of the complaint were denied generally. The answer specifically averred that the deed of February 25, 1918, was never delivered and that no title vested under said deed in the grantees therein named; that the title to the home place was vested in Lucretia E. Creighton at the time of her death and passed to them as her sole devisees. By their counterclaim they also alleged that John M. Creighton held the legal title to the properties referred to in the

record as the Crews farm and the Poe lot in trust for the use and benefit of Lucretia E. Creighton. They asked that a decree be entered finding that he held the legal title in trust for her use and benefit and that she was the beneficial owner thereof at the time of her death, and confirming title to said properties in them.

The undisputed facts pertaining to the Crews farm may be stated as follows: In 1920, Edward W. Creighton borrowed $1200 from his mother. A note was executed by him for that amount, payable to C. W. Creighton, trustee. This note was secured by a mortgage to C. W. Creighton, trustee, on the Crews farm. Later a second note for $1000, secured by a mortgage on the same property was also made by Edward W. Creighton to C. W. Creighton, trustee. Sometime prior to 1930, Mrs. Creighton took these two notes to the office of C. W. Creighton in Fairfield, the payee therein named. At her request he endorsed the notes and handed them back to her. By the endorsements both notes were assigned to John M. Creighton, Jr., without recourse. In 1936, Mrs. Creighton forwarded the two notes and mortgages from California to John M. Creighton for the purpose of foreclosing the mortgages. Under John's direction, foreclosure proceedings were instituted. The property was sold. It was bid in by John and the master's certificate was issued to him. In January, 1939, no redemption having been made, a master's deed to this property was issued to John M. Creighton. The evidence tends to show that John M. Creighton paid the taxes for the years 1937, 1938, 1939 and 1940; that the taxes for 1941 were paid by Mary Elgin and the taxes for 1942 by Edward W. Creighton.

It is the contention of appellees, in support of their counterclaim, that John M. Creighton took the legal title to the Crews farm, conveyed by the master's deed, in trust for the use and benefit of Lucretia Creighton whom, they alleged, was the beneficial owner thereof at the time of her

death, and that said property passed under her will to Mary and Edward.

Upon a hearing, the court entered a decree finding that John M. Creighton took no title to the home place under the deed of February 25, 1918; that the title thereto was in Lucretia E. Creighton at the time of her death; that the recording of that deed in January, 1936, was wholly inoperative to convey any title to the grantees therein named. The court further decreed that John M. Creighton held the legal title to the Crews farm and the Poe lot as trustee for the use and benefit of Lucretia E. Creighton, and that she was the beneficial owner thereof, in fee, at the time of her death; that all of said properties passed under the will of Lucretia E. Creighton to her son Edward and her daughter Mary, and that neither John M. Creighton in his lifetime, nor appellant, as his sole devisee, had any interest therein.

Under the facts related concerning the home place, it is apparent that the rights of the parties and the ownership of that property at this time depend upon the effect to be given to the deed of Judge Creighton and wife to Edward W. Creighton and John M. Creighton, dated February 25, 1918, and recorded on January 13, 1936. It is the contention of appellant that upon the death of Judge Creighton before that deed was delivered, his wife, Lucretia E. Creighton, under his will became the owner in fee of all the property described in that deed, which had not been theretofore conveyed by Judge Creighton in his lifetime. Appellant further contends that the deed was delivered by Lucretia E. Creighton at or prior to the time it was recorded. She further contends that, at the time of such delivery, Mrs. Creighton was the owner in fee of the property constituting the home place; that the effect of the delivery of that deed by Mrs. Creighton was to convey all of her interest in the property at the time the deed was delivered, which was the whole title in fee. If she is cor-

rect in this contention, then, of course, the property vested in Edward and John, the grantees, and the one-half interest so vested in John passed, under his will, to appellant, upon his death. A delivery to one of the grantees with intent to vest title would constitute a good delivery as to both. *McClugage* v. *Taylor*, 352 Ill. 550.

Appellees contend, on this branch of the case, that the deed of February 25, 1918, not having been delivered in the lifetime of Judge Creighton, one of the grantors, its subsequent delivery was wholly inoperative and no title passed thereunder. They further contend that the record does not show a delivery of the deed by Mrs. Creighton at any time, and that it was never intended by her that any title to the lands described in the deed should vest in the grantees therein named.

It is apparent, therefore, that the decisive issues as to the home place are whether said deed was delivered by Mrs. Creighton for the purpose and with the intention of vesting title in the grantees therein named and, if such delivery was made, whether the deed executed in February, 1918, and not delivered during the lifetime of one of the grantors, was sufficient to convey the title vested in her at the time of such delivery. It is conceded that at the time the deed was made in February, 1918, Mrs. Creighton had no interest in the property except an inchoate right of dower, and that she took title in fee under her husband's will. Appellees' main contention is that the deed not having been delivered in the lifetime of Judge Creighton, it became wholly inoperative and ineffective, and that its delivery after his death would not convey the title which Mrs. Creighton acquired under his will and which she owned at the time of such delivery. This contention is a novel one. Apparently the question has never been passed upon by this court. We think everyone will concede that the delivery of the deed after the death of one of the grantors would be wholly inoperative to, in any way, affect

the title of such deceased grantor. But that is not the question here involved. The question here is the effect of the subsequent delivery of the deed by the surviving grantor who, it is conceded, was the sole owner of the property in fee at the time of the alleged delivery. It is elementary that a deed, although properly signed, sealed and acknowledged, does not take effect as a conveyance until it is delivered.' A deed operates as of the date of delivery. Its character and effect must be determined as of that date. *Totten* v. *Totten,* 294 Ill. 70; *Bearss* v. *Ford,* 108 Ill. 16.

The question whether the wife joined in the deed of February 25, 1918, only for the purpose of releasing her inchoate right of dower, or intended to convey any other or different interest in the property, is not here involved. The question here is her relation to the deed at the time it was delivered, if it was delivered, and the effect of such delivery. The question of what Lucretia Creighton intended to convey by joining in the deed with her husband on February 25, 1918, at which time she had only an inchoate right of dower in the lands described in the deed, is wholly immaterial. The question is, What was the effect of her subsequent delivery of the deed after she became the owner of the fee, if such delivery was, in fact, made by her?

The deed not having been delivered during the lifetime of Judge Creighton, one of the grantors, it was wholly ineffective as to his interest in the property. At the time of his death he was the owner in fee of the property involved. By his will that property passed in fee to his widow. If the deed was subsequently delivered by her for the purpose and with the intent of vesting title in the grantees named in the deed, we know of no valid reason, and counsel have suggested none, why such delivery would not be effective to convey all interest she owned in the property at the time of such delivery.

The only case in point cited by either of the parties on this question is the case of *Shoenberger's Executors* v.

*Zook,* 34 Penn. St. 24, to which reference is made by appellant. In that case the property belonged to the wife. A deed was executed by the wife in which her husband joined, conveying the property to another. The deed was tendered to the grantee, who refused to accept it or to pay the consideration. The deed was returned to the husband who retained it. Sometime later the wife died. After her death the husband delivered the deed to the grantee named therein. It was accepted by him and he claimed title to the property under said deed. In passing on the question of the effect of the deed, the court held that the title, which was vested in the wife, did not pass by the husband's delivery of the deed after her death. It was said that the delivery of the deed was effective, however, to convey his interest as tenant by the curtesy, but it did not affect the title vested in the heirs of the wife. This seems to be the only reported case on the question of the effect of the delivery of a deed by the surviving grantor, whose only interest in the property was acquired upon, and grew out of, the death of the deceased cograntor. The case is in point on the question herein involved. The conclusion reached is both sound and logical. Here the deed was, in form, sufficient to convey all of Mrs. Creighton's interest in the property, described in the deed. If it was delivered by her with the intent and for the purpose of vesting title in the grantees, it was sufficient to convey all of her interest in the property at the time of such delivery, notwithstanding she had only an inchoate right of dower in the property conveyed at the time the deed was executed.

This brings us to the question of the delivery of the deed. In view of the conclusion we have reached as to the rulings of the court on the admission of evidence, we will avoid any discussion or expression as to the weight of the evidence. The evidence on this issue is somewhat meager and fragmentary. The delivery of a deed for the purpose of vesting title involves the question of the inten-

tion of the grantor. While no particular form is prescribed for the delivery of a deed, it is essential that the grantor shall indicate unequivocally by words or deeds, or both, that he parts with control of the instrument for the purpose of vesting title in the grantee. (*Selby* v. *Smith,* 301 Ill. 554.) That many factors enter into the determination of the question whether there has been such a delivery of a deed as will vest title in the grantee is shown by our discussion of many cases on the subject in *Seibert* v. *Seibert,* 379 Ill. 470. The mere fact that a deed has been recorded is, of itself, only *prima facie* evidence of its delivery. *Hathaway* v. *Cook,* 258 Ill. 92; *Ackman* v. *Potter,* 239 Ill. 578; *Clark* v. *Harper,* 215 Ill. 24; *Wilenou* v. *Handlon,* 207 Ill. 104.

The question of delivery is one of both law and fact. From the facts and attending circumstances is to be determined the legal question as to whether such acts and declarations constitute a legal delivery. (*Shults* v. *Shults,* 159 Ill. 654.) In all cases the question of delivery is open to consideration, to be determined from the facts in each particular case. Here the issue on the question of the delivery of the deed is in sharp conflict. The questions whether Mrs. Creighton delivered the deed to one of the grantees with the intention that title thereunder should vest, whether she filed it for record, or whether she caused or permitted it to be filed for record, are all questions in controversy.

When C. W. Creighton was on the witness stand, he was asked by counsel for appellant, "Did you ever have a conversation with Lucretia Creighton wherein she discussed the giving of the deed to the home farm to John and Edward Creighton." An objection was interposed to this question. The objection was sustained. Thereupon, counsel for appellant made the following offer: "We expect to prove by this witness that he had a conversation with Lucretia Creighton in her lifetime, wherein she stated that she had deeded the home farm to Edward and John. And

she said the reason why she did it was because she was equalizing the advances she had made to the other children." An objection to the offer was sustained. The witness was not permitted to answer. The ground of the objection, as stated by counsel for appellees, was, in substance, that Mrs. Creighton could not deliver the deed after the death of Judge Creighton. This evidence was offered on the issue of the delivery of the deed by Mrs. Creighton after Judge Creighton's death. The ruling of the court, however, in sustaining the objection, indicates that it was based on the ground that it was not permissible to prove, by this witness, statements made by Mrs. Creighton in her lifetime. This ruling was improper. Proof of any conversation or admissions made by Mrs. Creighton in her lifetime, bearing on the question of the delivery of the deed, was proper. C. W. Creighton was not a party to the suit, nor was he interested in the result. He was a competent witness to testify to statements or admissions made by Mrs. Creighton, although she was deceased. The bar of the statute relates only to the competency, as witnesses, of parties to the suit or who are interested in the result. It does not render inadmissible conversations with, or statements made by, deceased persons, when proved by competent witnesses. The offered testimony was relevant and proper, and should have been admitted. *Weigand* v. *Rutschke*, 253 Ill. 260; *Schell* v. *Weaver*, 225 Ill. 159; *First Nat. Bank* v. *Bennett*, 215 Ill. 398; *Riggs* v. *Powell*, 142 Ill. 453.

A like error was made in the examination of the same witness concerning the Crews farm. The witness was asked by counsel for appellant, "Did you ever have a conversation with Lucretia Creighton in which she stated——." The question was here interrupted by an objection that the "examination was leading." The ruling of the court was, "Well, of course, the objection would be well taken on the ground you can't prove a conversation with a deceased person, can you, when they are not here to deny it in any

shape, form or fashion?" The witness was then asked, "Did you ever have a conversation with Lucretia Creighton in regard to the fact that she was giving those notes to John Creighton," (referring to the notes executed by Edward Creighton, secured by the mortgages on the Crews farm.) To this question a general objection was made. With permission of the court, counsel for appellant then added to the question, "Because she had previously given Mary the bank stock and she wished to equalize, with this gift, what she had given to Mary?" The general objection was then renewed. The objection was sustained. Clearly, this was error. The issue of whether the notes secured by the mortgages on the Crews farm belonged to Lucretia Creighton or John M. Creighton, at the time the foreclosure proceeding was had, was vital and decisive as to that property. The question, as framed, called for an answer relative to the issue being tried. Obviously, if the notes and mortgages belonged to John, the title he acquired as a result of the foreclosure proceedings also belonged to him, and Lucretia Creighton had no interest therein. This was the decisive issue in the case. The witness was not a party to the suit, nor was he interested in that issue, or in the result of the suit. Any conversations with, or admissions made by, Lucretia Creighton in her lifetime, against her interest, concerning the ownership of the notes, were relevant and competent. The court clearly erred in sustaining the objection. It is immaterial that the ruling was not followed by an offer of proof. It is not necessary that an offer of proof be made where the question shows the purpose and materiality of the evidence. It is not necessary that counsel state what the answer would be. If a question is in proper form and clearly admits of an answer relative to the issues, the party by whom the question is propounded is not bound to state facts proposed to be proved by the answer unless the court requires him to do so. *Hartnett* v. *Boston Store of Chicago,* 265 Ill. 331.

Reluctant as we are to remand an equity case for a new trial because of errors intervening in the former trial, we feel compelled to do so in this case. The facts which appellant offered to show by the witness relevant to the issue of the delivery of the deed covering the home place, and with reference to the ownership of the notes secured by the mortgages on the Crews farm, were so vital and important that we do not think the case can be properly disposed of without such evidence in the record. In many other respects the record is unsatisfactory. While we appreciate that some difficulties confronted both parties in making their proofs, arising from the fact that both Mrs. Creighton and John M. Creighton were deceased, we are impressed with the fact that the evidence as offered is unnecessarily fragmentary and incomplete. On the whole, the record is such that we do not think a case of this importance may be properly disposed of upon the record as made. There was a decided lack of care on both sides, both in the production and introduction of evidence.

We have omitted any discussion of facts relative to the Poe lot. While this transaction is largely independent and separate from the transactions concerning the other properties, yet the transactions are all so interwoven and connected that we feel that the decree as a whole must be reversed. Upon another trial the evidence offered may also affect the rights of the parties as to the Poe lot. Nothing is to be gained for the parties by trying their case piecemeal.

For the errors in the rulings on the admission of evidence as heretofore indicated, the decree of the circuit court of Wayne county is reversed and the cause is remanded to that court for a new trial.

*Reversed and remanded.*

GUNN and MURPHY, JJ., dissenting.