LINTNER ESTATE v. MEIER.

1. DEEDS—DELIVERY—INTENT.

The whole object of the delivery of a deed is to indicate an intent upon the part of the grantor to give effect to the instrument.

2. SAME—DELIVERY—INTENT.

Any act presumptively a delivery of a deed will not be a delivery if the intent to make it such is wanting.

3. SAME—DELIVERY—INTENT—EVIDENCE.

The act of delivery is not necessarily a transfer of the possession of the instrument to the grantee, and an acceptance by him, but it is that act of the grantor, indicated either by acts or words, or both, which shows an intention on his part to perfect the transaction by a surrender of the instrument to the grantee, or to some third person for his use and benefit.

REFERENCES FOR POINTS IN HEADNOTES

[1] 16 Am Jur, Deeds § 110.
[2, 3] 16 Am Jur, Deeds §§ 115–118.
[4] 16 Am Jur, Deeds §§ 399, 447.
[5] 16 Am Jur, Deeds §§ 129, 354.
[6] 16 Am Jur, Deeds § 447.

4. SAME—DELIVERY—POSSESSION OF GRANTOR—PRESUMPTIONS.

That a deed was found in the grantor's possession at time of her death does not necessarily defeat delivery to the grantee, but the burden is heavy on the grantee to prove delivery in such case, for presumptively there has been none.

5. SAME—DELIVERY—INTENTION TO VEST TITLE—RETURN OF DEED TO GRANTOR.

Once it is shown there has been a delivery of a deed with intention to vest title, the fact that the deed was returned to the grantor would not in law defeat the delivery.

6. SAME—DELIVERY—INTENT—EVIDENCE.

Evidence *held*, to sustain finding of trial court in administrator's suit to set aside deed by decedent to defendant that decedent had delivered deed to defendant with the present intention to convey her interest to grantee, notwithstanding deed was found among decedent's effects upon her death approximately 2 years later.

Appeal from Muskegon; Beers (Henry L.), J. Submitted October 4, 1955. (Docket No. 10, Calendar No. 46,514.) Decided December 1, 1955.

Bill by Leo L. Linck, administrator of the estate of Amina Lintner, deceased, against Millie Meier to set aside deed. Decree for defendant. Plaintiff appeals. Affirmed.

*Harold H. Smedley* and *Leo L. Linck,* for. plaintiff.

*Street & Sorensen* and *Hinds & Sikkenga,* for defendant.

SMITH, J. Amina Lintner, the alleged grantor (whom we will hereafter describe as the grantor), was a widow. She was 81 years of age at the time of her death, "quite an accurate lady." She had a pension of $48 per month, which she supplemented from time to time by the manufacture and sale of paper flowers, and, occasionally, of crochet work. She lived alone. She had an adopted daughter, living in Chicago, whom she saw at intervals. There

is some conflict in the record about the frequency of those visits. The grantor was under the impression that "her daughter hadn't been to see her for 14 years, until the summer she died.". The daughter's testimony, however, was that since her marriage, 10 years back, she had returned home 4 or 5 times. The number is unimportant. We mention it for the light it may cast on the grantor's intentions and acts. "She (the grantor) said she wasn't leaving anything to her because her daughter hadn't visited her—and the neighbors had taken care of her for many years." This was the next-door neighbor speaking, Mrs. Hazel Norton.

The grantee involved is Mrs. Millie Meier. She is also the defendant-appellee in this case. She saw a good deal of the grantor over a period of some 10 years before the latter's death. They visited back and forth. Mrs. Meier occasionally gave her small presents, groceries, once a blanket. From time to time they prayed together. The days shortened. Mrs. Lintner had her friend place $800 in cash in an envelope which was pasted to the back of the radio in the Lintner home. It was to be for her funeral expenses. She died on September 20, 1953. Her body was discovered by one of the neighbors who had gone over to see her. The coroner was called, and certain friends, including Mrs. Meier. When the coroner asked about the belongings of the deceased, Mrs. Meier removed the above-described envelope from its place of concealment and handed it to him. In the envelope was found $800 and the deed in question. This case turns on how it came to be there. If it had been effectively delivered prior to death the property belongs to the grantee. If not, to the estate. We turn to the circumstances surrounding the execution and claimed delivery of the deed.

In the summer of 1951 the grantor requested a neighbor lady to write the legal description of the property involved in a deed form. The grantor dictated from something, the witness did not know what. "She gave as a reason that she wanted me to write, that she thought I could write plain." Later that summer (in August) Mrs. Teichthesen, who was head bookkeeper for a manufacturing concern, and a notary public, was called by her husband, who is Mrs. Meier's half brother. She was to bring her seal home because after supper she was to notarize a document for someone. That evening Mrs. Meier called and took her out to the Lintner home, where Mrs. Lintner produced the deed form, with the description written plain upon it, and asked Mrs. Teichthesen to "make it out to Mrs. Meier." She did so, but adds: "I did not notarize the deed in Mrs. Lintner's home, for the reason that there were no witnesses at the home." Accordingly they left, went to Mrs. Meier's home to pick up her husband, and proceeded together to the Teichthesen home. Here the deed was signed, with Mrs. Teichthesen and Mr. Meier as witnesses, and notarized with some little formality. The record states:

"*A.* Well, I asked Mrs. Lintner to raise her right hand and asked her if it was her free act and deed and she said, 'Yes.'

"*Q.* Then after that did you notarize?

"*A.* Right.

"*Q.* Now the deed was witnessed and notarized in that fashion, and would you describe to the judge, in your own words, what happened next?

"*A.* Well, Mrs. Lintner had the deed and she handed it to Mrs. Meier and a dollar was given to Mrs. Meier in consideration for this deed.

"*The Court:* To Mrs. Meier?

"*A.* That is right. Mrs. Meier gave Mrs. Lintner a dollar in consideration of this deed. And at that

time she, Mrs. Lintner, laughed about it because she said that Mrs. Meier had given her much more than that.

"*Q.* And then what next did Mrs. Lintner say or do?

"*A.* Well, Mrs. Lintner, after it was notarized and she had given it to Mrs. Meier, she said, 'Well, here is the deed. I want you to have it. It is yours.'

"*Q.* Says, 'Here is the deed. I want you to have it. It is yours?'

"*A.* That is right."

Mrs. Teichthesen saw the deed in the grantee's purse about a week later, as did her husband. After Mrs. Lintner's death, however, approximately 2 years later, the deed was found with her effects in the envelope, as above described.

It is not necessary that we set forth the testimony of the neighbors. Fairly indicative of its general tenor is that of Mr. Blaine Norton who talked with the grantor at his home shortly before her death. On this occasion, he says, "she told us that she had deeded her property to Mrs. Meier. That was on a Friday before she died."

It is the position of the administrator, warmly urged upon us, that all of the above "is nothing less than a family conspiracy to obtain Mrs. Lintner's property." It is said that the deed was intended to take effect only upon Mrs. Lintner's death, was testamentary in character, and that there was no delivery thereof prior to the grantor's death. Various words and circumstances are argued as indicative thereof. We have considered them all.

The law applicable to this case may be very simply stated, although the application of the facts thereto is more complex. Whether there has been a delivery of a deed now depends upon the intention of the grantor. It is shown by his words and actions and by the circumstances surrounding the transaction.

As we said in *Hynes* v. *Halstead,* 282 Mich 627, 631, 637:

"The whole object of the delivery of a deed is to indicate an intent upon the part of the grantor to give effect to the instrument. *Thatcher* v. *St. Andrew's Church of Ann Arbor,* 37 Mich 264. Any act presumptively a delivery of a deed will not be a delivery if the intent to make it such is wanting. *Stevens* v. *Castel,* 63 Mich 111. * * *

"The act of delivery is not necessarily a transfer of the possession of the instrument to the grantee, and an acceptance by him, but it is that act of the grantor, indicated either by acts or words, or both, which shows an intention on his part to perfect the transaction by a surrender of the instrument to the grantee, or to some third person for his use and benefit. *Thatcher* v. *St. Andrew's Church of Ann Arbor, supra.*

"The test is whether it can be said that delivery of the deed was such as to convey a present interest in the land. *Pollock* v. *McCarty,* 198 Mich 66."

So far as the finding of the deed in the grantor's possession is concerned, it does not necessarily defeat delivery, but the burden is heavy on the grantee to prove delivery in such case, for presumptively there has been none. The point to be stressed is that delivery may be good, notwithstanding that subsequently thereto the deed returns to the physical custody of the grantor. We commented on the matter in *McCauley* v. *Schrock,* 236 Mich 317, 321, 322, in the following terms:

"It is apparent from a consideration of all the testimony bearing on the question of delivery that it was the intention of the grantor that the property should go to the defendant on her death. There had been a delivery to defendant. It is doubtful under our decisions whether any subsequent act or direction on the part of the grantor could thereafter affect

the rights of the defendant. Any condition not expressed in the deed would constitute an attempt to make delivery to the grantee in escrow, and this may not be done. *Wipfler* v. *Wipfler,* 153 Mich 18. See note to this case in 16 LRA NS 941. In *Blackford* v. *Olmstead,* 140 Mich 583, 588, it was said:

"'If the proofs should show a delivery with intention to vest title, the fact that the deed was returned to the grantor would not in law defeat a delivery once accomplished.'"

We need not cite the numerous cases in this State which are in accord with this view. In *Takacs* v. *Takacs,* 317 Mich 72, Chief Justice CARR, writing for the Court, carefully analyzed our decisions with respect to the matter of delivery. See, also, 4 Tiffany, Real Property (3d ed), § 1033 *et seq.,* and 3 American Law of Property, § 12.64 *et seq.* The record sustains the finding of the trial court who concluded, in part, as follows:

"It is my conclusion from this testimony that at the time of the execution of this deed, there was an actual delivery of it by Mrs. Lintner to the defendant Meier and at that time Mrs. Lintner had the present intention to convey her interest in the property to Mrs. Meier. It seems to me that this conclusion is borne out by practically all the testimony in this case."

And, with respect to rebutting the presumption of nondelivery:

"Although it does require strong evidence to rebut such a presumption, it seems to me the evidence in this case performs that purpose."

We agree. The record amply sustains the findings of the trial court. We have, moreover, examined the other points raised by appellant, including that of lack of consideration, and find them without controlling influence on the issues presented.

The decree of the trial court dismissing plaintiff's bill of complaint is affirmed, with costs to appellee.

Carr, C. J., and Butzel, Sharpe, Boyles, Reid, Dethmers, and Kelly, JJ., concurred.