Ione NELSON, Administratrix of the Estate of Charles L. Nelson, Deceased, Plaintiff and Appellee,

v.

Clarence NELSON, Floyd E. Nelson, Lester Nelson, Glen Nelson, Vern Nelson, Marvin Nelson, Gladys Nelson Kubik, Duane Nelson and May Nelson Bruun, Defendants and Appellants.

No. 12811.

Supreme Court of South Dakota.

Argued Feb. 25, 1980.

Decided June 18, 1980.

John L. Morgan of Morgan, Fuller, Theeler & Cogley, Mitchell, for plaintiff and appellee.

Dudley R. Herman of Herman & Wernke, Gregory, for defendants and appellants.

MILLER, Circuit Judge.

### ACTION

This is an action to set aside a deed to certain real property located in Charles Mix County, South Dakota. Appellant seeks reversal of the trial court judgment which quiets title to certain property in appellee, which judgment held that no delivery of a certain deed had been made and further held that appellant had procured said deed by fraud and undue influence. We affirm.

### PARTIES

Appellants consist of nine nieces and nephews of decedent, Charles L. Nelson. Appellee Ione Nelson is the daughter and sole heir at law of the decedent.

### FACTS

The decedent was born May 30, 1881. He was married on September 19, 1924, and one child, appellee, was born as issue to the marriage. Decedent was divorced in 1958 and his ex-wife thereafter resided with appellee outside the state of South Dakota. Decedent continued to reside on his farm near Academy, Charles Mix County, South Dakota.

The record indicates that although decedent was intelligent, educated and could be described as having an insatiable love for reading, he was also stubborn, eccentric and extremely frugal. His frugality was so prominent that he saved mounds of reading material, which made movement throughout the home arduous.

It is apparent that shortly after his divorce, decedent became estranged from appellee. Frequent exchange of letters with appellee evidenced, however, that decedent's indifference to her softened in his later years.

Decedent executed a warranty deed on October 3, 1962. The deed named the nine appellants as grantees to some 1,040 acres of land in Charles Mix County and six lots in Platte, South Dakota, reserving a life estate in decedent. Although none of appellants were present at the time of its drafting or signing, the deed was properly notarized.

In November 1964, one of the appellants (Lester) and his son Roger had occasion to visit decedent at his home. Lester testified that during the course of the visit decedent handed him the deed stating, "I have drawn up a document here for you and your brothers and sisters, and I want you to have it." Although Lester read the deed, his testimony reflects that he laid it down when some game hunters came to the house. The record additionally reflects that in spite of the fact that Lester returned to decedent's home some two or three weeks later to pick up a car body decedent had given to Lester's son Roger, neither decedent nor Lester mentioned the deed to each other again.

On July 5, 1965, decedent had occasion to visit the home of another appellant Clarence. Clarence testified that during this visit, decedent scribed a note [1] explaining where Clarence could find the deed "in case he (decedent) got sick or disabled." Although Clarence retained possession of the note, he did not see the deed until January 30, 1966. Decedent continued to retain sole possession of the deed.

Sometime in late January 1966, Clarence was contacted by Sheriff McCabe regarding the care of decedent's livestock. Clarence thereafter learned that decedent's physical health was poor, requiring hospitalization in Platte, South Dakota, on January 29, 1966.

Upon advice of Sheriff McCabe, Clarence secured legal advice from attorney Paul Kern, Sr., and a petition for guardianship of decedent was prepared and subsequently filed on February 1, 1966, appointing Clarence as guardian.

It appears from the record that upon request of decedent during the second day of his hospitalization, Clarence went to decedent's home to get his "suitcase and his shaving equipment." Clarence testified that decedent never told him to pick up the deed at that time. Clarence nevertheless searched for and found the deed. Clarence thereafter delivered the deed to attorney Paul Kern, Sr., who apparently kept the deed at his law office until "the end of 1972."

Although Mr. Lee Tappe, an attorney in Platte, South Dakota, had previously been retained to complete some investigative work for decedent during the guardianship and thereafter corresponded with appellee concerning her inquiries as to the integrity of the guardianship,[2] and although he had consulted with decedent with reference to his estate, it appears Tappe nevertheless advised Clarence in regard to recording the

---

1. The note which was, in part, written in pen and, in part, written in pencil stated:

    "West end of the couch, underneath, is two small bundles containing deeds for all ranch land. In the house."

    \* \* \* \* \* \*

    "To Clarence Nelson . . . (signed) Chas. L. Nelson July 5th"

2. Certain excerpts from Tappe's letter to appellee are:

    "[Y]our father is quite sure that there are a number of people, including his guardian, Clarence Nelson of Gregory, So. Dak., who is trying to cheat him."
    "[Y]our father is, in my opinion, mentally competent . . . he is physically incompetent to manage the affairs of his estate."
    "[Y]our father's biggest desire is that his entire estate go to you upon his death . . ."

deed.[3] After obtaining this advice, Clarence secured the deed from attorney Kern and recorded it with the register of deeds of Charles Mix County, on January 15, 1973. The decedent passed away one week later on January 22, 1973, never having been released from the hospital and subsequent nursing home care, all of which commenced in January of 1966.

Although an annual accounting of real property assets was made each year by Clarence as guardian, the real property in question was consistently listed as a real property asset belonging to decedent. It is undisputed that none of the appellants ever claimed title to the property during decedent's lifetime. Clarence acknowledged that he at no time during the guardianship informed appellee that he possessed the deed. Additionally he admits that decedent spoke a "time or two" about selling the land.

## ISSUE

Although the trial court found Clarence had procured the deed through fraud and undue influence, we do not feel compelled to reach that issue on appeal and here confine ourselves to the following: WAS THERE A VALID DELIVERY OF THE DEED BY DECEDENT TO APPELLANTS SO THAT A PRESENT INTEREST IN THE REAL PROPERTY VESTED IN THEM AS GRANTEES? We find that the delivery was defective.

## SCOPE OF REVIEW

■ The parameters of our review in this case are limited. We must not set aside the trial court findings of fact unless they are "clearly erroneous." Additionally, we must give due regard to the opportunity of the trial court to judge the credibility of witnesses. SDCL 15-6-52(a); *In re Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455 (1970).

**3.** Interestingly, Tappe had other involvements with this litigation. On April 25, 1973, he, as a Judge Pro Tem of the District County Court, signed the "Order for and Notice of Hearing on Final Account and Petition for Discharge of Guardian (Clarence Nelson)" in decedent's guardianship action.

## DECISION

■ Whether delivery of a deed has been effected has long been recognized to be a question of intent to be determined from all the facts surrounding the transaction. *Hagen v. Palmer*, 87 S.D. 485, 210 N.W.2d 164 (1973); *Senechal v. Senechal*, 79 S.D. 416, 112 N.W.2d 618 (1962). The delivery of a deed must be unconditional in nature and no delivery can be accomplished without the grantor relinquishing possession of the deed as well as all power and control over it. See *Hagen v. Palmer*, supra; *Benson v. Benson*, 63 S.D. 241, 257 N.W. 460 (1934); *Cassidy v. Holland*, 27 S.D. 287, 130 N.W. 771 (1911).

■ Although the rule is well recognized and noted herein that there exists a presumption of valid delivery where the deed was duly executed, acknowledged, and in possession of the grantee, the presumption is dissolved where it is shown the grantee was not placed in possession of the deed by the grantor. See *Huber v. Backus*, 79 S.D. 342, 112 N.W.2d 238 (1961); *Lewis v. Tinsley*, 66 S.D. 648, 287 N.W. 507 (1939); *Wolf v. Wolf*, 59 S.D. 418, 240 N.W. 349 (1932).

■ The record leaves little or no doubt that Clarence was never placed in possession of the deed by decedent. The presumption of a valid delivery is therefore extinguished even though the deed was duly executed by decedent. By his own admission, Clarence testified that he obtained the deed from the decedent's residence while there to pick up decedent's "suitcase and his shaving equipment." Accordingly, we must look to all other surrounding facts to determine whether a valid delivery of the deed exists without the aid of a presumption.

■ There exist only two possible times of delivery. Appellants first contend that a

Then, when this litigation was commenced he signed the answer of the now appellants as their counsel.

The record is unclear when he finally recognized the conflicts of interest and withdrew from participation as counsel in this litigation. He did testify at the trial.

valid delivery occurred in the fall of 1964 when decedent handed the deed to Lester stating, "I have drawn up a document here for you and your brothers and sisters, and I want you to have it." We do not agree.

There is no question that Lester laid the deed down and that decedent thereafter retained exclusive and absolute control and possession of the deed and of the property from that day forward. We additionally find appellants' argument defective when considering both appellants' and decedent's subsequent activities, which are not consistent with the theory of a valid delivery. The record supports that Lester returned to decedent's farm only two or three weeks after the alleged 1964 delivery. Lester himself testified that decedent never mentioned the deed to him again, nor did he discuss the deed with decedent.

When reviewing the record, there is little question that any attempted delivery of the deed in 1964 was, at best, not an irrevocable delivery. We must therefore conclude that the 1964 transaction was not an irrevocable delivery of the deed and was consequently invalid.

We next direct our attention to the July 5, 1965, note through which appellants claim constructive delivery was accomplished.

■ We pause momentarily to note that the 1965 theory of constructive delivery itself supports the trial court's finding that there existed no valid 1964 delivery since it illustrates the revocable nature of the first transaction with Lester.

Although appellants claim a valid delivery in 1965, Clarence freely admitted that decedent spoke of selling the land "a time or two" subsequent to decedent's writing the note and handing it to Clarence. This, too, we find inconsistent with the theory of a valid delivery.

■ The note itself did not instruct Clarence as to when he should obtain the deed but merely directed him to a location in the home where important papers were stored by decedent. The record contains only the testimony of Clarence that decedent instructed him to go and get the deed "in case he (decedent) got sick or disabled." Even though decedent may have so instructed Clarence, the attempted delivery was conditional upon decedent's illness and certainly was not an irrevocable delivery.

■ Finally, we find appellants' theory of valid delivery inconsistent with Clarence's own actions. The record reflects that Clarence never advised decedent that he had obtained possession of the deed. Neither did he advise the court during the guardianship proceeding that he claimed an interest in the property he listed as belonging to the decedent. The only consistent theory is that which appellee espoused; namely, that Clarence was aware he had no valid claim to the property and accordingly made none.

Viewed as a whole, the two transactions appellants attempt to establish as valid deliveries of the deed must fail when viewed in the light of the surrounding facts.

We agree with the trial court's judgment which set aside and canceled the deed in question and which quieted title to the real estate in appellee.

The judgment of the trial court is affirmed.

WOLLMAN, C. J., and DUNN and HENDERSON, JJ., concur.

FOSHEIM, J., dissents.

MILLER, Circuit Judge, sitting for MORGAN, J., disqualified.

FOSHEIM, Justice (dissenting).

It appears from the uncontroverted evidence that in the fall of 1964, the decedent handed a deed to Lester Nelson stating: "I have drawn this document for you and your brothers and sisters and want you to have it." That was an unconditional expression of intent which could hardly be stated in more certain terms. The law indulges in a presumption of acceptance of deeds when the grant creates no obligation or burden upon the grantee and is beneficial to him. *Arnegaard v. Arnegaard*, 7 N.D. 475, 75

N.W. 797 (1898); 23 Am.Jur.2d Deeds § 132 (1965). Manual transfer is the simplest mode of delivering a deed, and if the grantor hands the deed to the grantee personally, without saying or doing anything to qualify the significance of such act, an effective delivery is made. Such direct change of physical custody with intent to deliver has been called "absolute delivery." 23 Am. Jur.2d Deeds § 91 (1965). The delivery being absolute, the instrument took effect pursuant to SDCL 43–4–8.* Due to an interruption, the deed was left on the table at the grantor's residence and was retained by him. In *Birchard v. Simons*, 59 S.D. 422, 240 N.W. 490 (1932), however, we held that a completed delivery is not subsequently invalidated by the fact that the grantee returns the deed to the grantor. *See also: In re Estate of Bright*, 215 N.W.2d 253, 87 A.L.R.2d 787 (Iowa 1974); *Parceluk v. Knudtson*, 139 N.W.2d 864 (N.D.1966); *Hilliard v. Hilliard*, 240 Iowa 1394, 39 N.W.2d 624 (1949); *Estate of Lintner v. Meier*, 344 Mich. 119, 73 N.W.2d 205 (1955); *McMillen v. Chamberland*, 71 N.D. 65, 298 N.W. 767 (1941).

The delivery of a deed to one of the grantees named therein, who receives the deed from the grantor, is generally regarded, in the absence of evidence to the contrary, as a delivery in favor of all the grantees. *Hitz v. National Metropolitan Bank*, 111 U.S. 722, 4 S.Ct. 613, 28 L.Ed. 577 (1884); *Pass v. Stephens*, 22 Ariz. 461, 198 P. 712 (1921); *Sanders v. Crabtree*, 44 Cal. App.2d 602, 112 P.2d 923 (1941); *Creighton v. Elgin*, 387 Ill. 592, 56 N.E.2d 825, 162 A.L.R. 883 (1944); *Hild v. Hild*, 129 Iowa 649, 106 N.W. 159 (1906); *White v. Hogge*, 291 S.W.2d 22 (Ky.1956); *Ritchie v. Davis*, 26 Wis.2d 636, 133 N.W.2d 312 (1965).

The conclusion that there was a valid delivery of the deed in the fall of 1964 is not eroded by the fact that grantor retained control of the land pursuant to a recitation in the deed that "Grantor retains life interest." It is settled law that if the instrument passes a present interest or right, even though the enjoyment thereof be postponed until the death of the grantor, it is nevertheless a valid deed. *Trumbauer v. Rust*, 36 S.D. 301, 154 N.W. 801 (1915).

---

* SDCL 43–4–8 provides:

A grant cannot be delivered to the grantee conditionally. Delivery to him or to his agent as such is necessarily absolute; and the instrument takes effect thereupon discharged of any condition on which the delivery was made.